IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CLYDE E. MEASE, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 06-271-SLR |
| v. | ) | |
| | ) | |
| WILMINGTON TRUST COMPANY | ) | Trial By Jury Demanded |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S OPENING BRIEF IN SUPPORT OF ITS
MOTION TO DISMISS**

Sheldon N. Sandler (No. 245)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street, P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6673
Facsimile: (302) 576-3330
ssandler@ycst.com
Attorneys for Defendant

DATED: May 17, 2006

044203.1023

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS....................................................................................... i

TABLE OF AUTHORITIES ............................................................................... ii

NATURE AND STAGE OF THE PROCEEDINGS ...........................................1

SUMMARY OF ARGUMENT .........................................................................2

STATEMENT OF FACTS .................................................................................3

ARGUMENT......................................................................................................4

I.      STANDARD OF REVIEW .....................................................................4

II.     THIS COURT DOES NOT HAVE JURISDICTION OVER
        COUNT II, THE DELAWARE DISCRIMINATION STATUTE,
        AND SHOULD DISMISS THAT COUNT. ............................................5

III.    THE COURT SHOULD NOT ACCEPT SUPPLEMENTAL
        JURISDICTION OVER PLAINTIFF'S COMMON LAW
        IMPLIED COVENANT OF GOOD FAITH AND FAIR
        DEALING CLAIM...................................................................................9

IV.     THE GENERAL ASSEMBLY EXPRESSED ITS INTENT THAT
        THE AMENDMENT TO THE DELAWARE DISCRIMINATION
        STATUTE PREEMPTED THE FIELD. ..................................................12

CONCLUSION..................................................................................................14

# TABLE OF AUTHORITIES

Page

Cases

*Ayres v. Jacobs & Crumplar, P.A.,*
   1996 Del. Super. LEXIS 565,
   (Del. Super. Ct. 1996) ................................................................................. 13

*Conley v. Gibson,*
   355 U.S. 41 (1957) ..................................................................................... 4

*Conneen v. MBNA Am. Bank, N.A.,*
   334 F.3d 318 (3d Cir. 2003) ...................................................................... 13

*D.P. Enter. Inc. v. Bucks County Cmty. Coll.,*
   725 F.2d 943 (3d Cir. 1984) ...................................................................... 4

*DeRasmo v. Hospitality Franchise Systems, Inc.,*
   1995 U.S. Dist. LEXIS 6349,
   (D. N.J. May 8, 1995) ................................................................................ 10

*E.I. DuPont de Nemours and Co. v. Pressman,*
   679 A.2d 436 (Del. 1996) .......................................................................... 12

*EEOC v. Avecia, Inc.,*
   2005 U.S. App. LEXIS 22157,
   (3d Cir. Oct. 13, 2005) .............................................................................. 12

*Ex parte McNeil,*
   80 U.S. 236 (1872) ..................................................................................... 7

*Finch v. Hercules, Inc.,*
   809 F. Supp. 309 (D. Del. 1992) ............................................................... 13

*First Transit, Inc. v. City of Racine,*
   359 F. Supp. 2d 782 (D. Wis. 2005) ......................................................... 8

*Lettich v. Kenway,*
   590 F. Supp. 1225 (D. Mass. 1984) .......................................................... 10

*Lord v. Souder,*
   748 A.2d 393 (Del. 2000) .......................................................................... 13

*Lyon v. Whisman & Associates, P.A.,*
   45 F.3d 758 (3d Cir. 1995) ........................................................................ 9, 10

*Morse v. Lower Merion Sch. Dist.,*
    *132 F.3d 902 (3d Cir. 1997)* ..................................................................... 4

*Mosley v. Bay Ship Management, Inc.,*
    2000 U.S. Dist. LEXIS 20251,
    (D.N.J. Dec. 27, 2000) ........................................................................... 4

*Nicol v. Imagematrix, Inc,*
    767 F. Supp. 744 (E.D.Va. 1991) .......................................................... 9

*Pen. Ben. Guar. Corp. v. White Consol. Indus.,*
    998 F.2d 1192 (3rd Cir. 1993),
    *cert. denied,* 510 U.S. 1042,
    114 S. Ct. 687 (1984)............................................................................... 4

*Rogers v. Exxon Research & Engineering Co.,*
    550 F.2d 834 (3d Cir. 1977) ................................................................... 7

*Shuster v. Derocili,*
    775 A.2d 1029 (Del. 2001) ......................................................... 5, 12, 13

*Wehr v. Burroughs Corp.,*
    619 F.2d 276 (3d Cir. 1980) ................................................................... 7

Other Authorities

29 U.S.C. §621, et seq................................................................................. 3

42 U.S.C. § 1981a(b)(3).............................................................................. 7

Delaware Discrimination In Employment Act ("DDEA"),
    19 Del. C. Chapter 7, §710 et seq .............................................. 1, 3, 5, 7

Fair Labor Standards Act ("FLSA"),
    29 U.S.C. § 207(a), ................................................................................. 9

Title VII of the Civil Rights Act of 1964
    42 U.S.C. § 2000e et seq.......................................................................... 7

044203.1023

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Clyde E. Mease, Jr. filed this lawsuit on April 26, 2006 alleging that he was terminated because of his age in violation of the federal Age Discrimination In Employment Act, 29 U.S.C. §621 et seq. and the Delaware Discrimination In Employment Act, 19 Del. C. §711, et seq., and  that his termination constituted a breach of the Delaware common law implied covenant of good faith and fair dealing.  Defendant has filed a motion to dismiss the Delaware statutory and common law claims.  This is Defendant's opening brief in support of its motion.

## SUMMARY OF ARGUMENT

1.  This court does not have jurisdiction over the Delaware statutory claim since, according to that statute, all claims must be filed in Delaware Superior Court.

2.  By filing suit in this Court, Plaintiff has elected to pursue his federal remedy rather than his Delaware remedy.

3.  The Court should not accept supplemental jurisdiction over Plaintiff's common law claim, which does not have a common nucleus of operative facts with his age discrimination claim.

4. The Delaware General Assembly has reaffirmed the principle that the statutory discrimination laws have preempted the field and no Delaware common law remedy is available in this setting.

2

## STATEMENT OF FACTS

Plaintiff was formerly an employee of Defendant. Complaint ¶ 9. He was terminated on December 2, 2004 for violations of policies and procedures. Complaint ¶ 11. At the time he was 54 years of age. Complaint ¶ 8. In Count I of this lawsuit, he alleges that his termination violated the Age Discrimination In Employment Act ("ADEA"), 29 U.S.C. §621, et seq. In addition, in Count II he seeks to invoke the amended Delaware Discrimination In Employment Act ("DDEA"), 19 Del. C. §711, et seq. Complaint ¶ 22. Finally, he also alleges that his removal was accomplished in order to prevent him from obtaining the fruits of a purported "contractual agreement," which is not attached to the Complaint, and was based on "fraud, deceit or misrepresentation" to prevent him from obtaining benefits due him under his "contract with the defendant." Complaint, ¶¶ 24-5.

.

DB01:2087734.1                                                                                    044203.1023

## ARGUMENT

### I.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that the legal sufficiency of a Complaint may be challenged by demonstrating the plaintiff's failure to state a claim upon which relief can be granted. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). When considering a motion to dismiss, the court accepts "as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom," viewing them "in the light most favorable to the plaintiff." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

Although a court will accept the plaintiff's factual allegations as true, a motion to dismiss should be granted when "it appears to a certainty that no relief could be granted under any set of facts which could be proved." *Morse*, 132 F.3d at 906 (quoting *D.P. Enter. Inc. v. Bucks County Cmty. Coll.*, 725 F.2d 943 (3d Cir. 1984)). In particular, a court should not consider or regard as true "conclusory allegations of law, unsubstantiated conclusions, and/or unwarranted factual inferences." *Id.*, 132 F.3d at 906. Moreover, in deciding a motion to dismiss, the court may consider the Complaint, exhibits attached to the Complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents. *Mosley v. Bay Ship Management, Inc.*, 2000 U.S. Dist. LEXIS 20251, *10 (D.N.J. Dec. 27, 2000) (citing *Pen. Ben. Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3rd Cir. 1993), *cert. denied*, 510 U.S. 1042, 114 S. Ct. 687 (1984)).

II.    **THIS COURT DOES NOT HAVE JURISDICTION OVER COUNT II, THE DELAWARE DISCRIMINATION STATUTE, AND SHOULD DISMISS THAT COUNT.**

Regardless of the substantive merit (or lack of merit) of his state law discrimination claim, Plaintiff may not pursue it in this Court.  Effective on September 10, 2004, the Delaware General Assembly enacted the current version of the Delaware Discrimination In Employment Act ("DDEA"), 19 Del. C. Chapter 7, §710 et seq. Before that date, no cause of action was authorized under the DDEA.

The synopsis of the Delaware Senate Bill states that it created a right to sue in Delaware Superior Court after the exhaustion of administrative remedies. Delaware Bill Summary, 2004 Reg. Sess. S.B. 154 (attached as Exhibit A).  The synopsis explained:

> This bill confirms that Chapter 7 is the exclusive and sole remedy for employment discrimination claims, requiring initial processing of all such claims with the Department of Labor for review and action. This bill effectively re-establishes the exclusive remedy put in question by the decision in *Shuster v. Derocili*, 775 A.2d 1029 (Del. 2001). … Sections 712, 714 and 715 have been repealed in their entirety and rewritten to accomplish the goals of initially pursuing informal methods of resolution through mediation and conciliation and then permitting civil actions in Superior Court.

Id.

Several provisions of the DDEA make it clear that the General Assembly intended DDEA claims to be pursued exclusively in Delaware Superior Court and, further, that the General Assembly intended to require claimants to make a choice between any available federal remedies and the remedy provided by the DDEA.  First, 19 *Del. C.* § 714(a) states: "(a) A charging party may file a civil action **in Superior Court,**

after exhausting the administrative remedies provided herein and receipt of a Delaware

Right to Sue Notice acknowledging same." (emphasis added).  Second, 19 *Del. C.* §

715(a) states: "**Superior Court shall have jurisdiction over all proceedings brought**

**by the charging party pursuant to § 714 of this title**." (emphasis added).  Third, 19 *Del.*

*C.* § 715(b) states: "**Superior Court shall have the authority** to provide the following

relief ...." (emphasis added).

Finally, 19 *Del. C.* § 714(c) states:

> (c) The charging party shall **elect a Delaware or federal**
> **forum** to prosecute the employment discrimination cause
> of action so as to avoid unnecessary costs, delays and
> duplicative litigation.  A charging party is **barred by this**
> **election of remedies** from filing cases in both Superior
> Court and the federal forum.  If the charging party files in
> Superior Court and in a federal forum, the respondent may
> file a motion to dismiss the Superior Court action under this
> election of remedies provision.

(Emphasis added).

If the General Assembly had intended to allow DDEA claims to be

pursued in federal court simultaneously with similar claims under federal law, it would

not have so plainly stated that such claims must be brought in Superior Court, nor would

it have explicitly required an election of remedies.  Just as the Superior Court must

dismiss a DDEA claim filed in that court when a lawsuit is also filed in federal court

making a parallel federal claim, this Court should reject Plaintiff's effort to circumvent

the desires of the Delaware General Assembly by filing his DDEA claim in this Court.

The question whether Plaintiff may simultaneously pursue claims under

both the ADEA and the DDEA is more than just procedural.  The remedies provided

under the two statutes are different.  Under the DDEA, the Superior Court is authorized

6

to award the same types of damages as are provided under Title VII of the Civil Rights

Act of 1964 ("Title VII"):

> **Superior Court shall have the authority** to … Order the
> payment of compensatory damages, including but not
> limited to general and special damages, punitive damages
> when appropriate, **not to exceed the damage awards
> allowable under Title VII of the Civil Rights Act of 1964
> [42 U.S.C. § 2000e et seq.], as amended,** provided that for
> the purposes of this subchapter, employers with 4-14
> employees shall be treated under Title VII's damage award
> as an employer with under 50 employees.[1]

19 *Del. C.* § 715(b).  In contrast, under the ADEA, lost wages and liquidated damages are

available but not compensatory or punitive damages.  29 U.S.C. § 626(b); *Wehr v.*

Burroughs *Corp.*, 619 F.2d 276 (3d Cir. 1980); *Rogers v. Exxon Research & Engineering*

*Co.*, 550 F.2d 834 (3d Cir. 1977).

Because Plaintiff is attempting to pursue both state and federal law claims

and because the DDEA requires him to choose one or the other and he has filed his claim

in this federal court, Count II of the Complaint must be dismissed.  Nothing in the statute

suggests that the General Assembly was attempting to confer jurisdiction in federal court

for state law claims.  Indeed, the Delaware General Assembly could not, even if it wished

to do so, confer jurisdiction in federal court over a state law claim.  It is fundamental to

American jurisprudence that federal courts are courts of limited jurisdiction.  They may

only hear cases in which jurisdiction is conferred upon them by the Constitution or an act

of Congress.  It has, therefore, long been held that states cannot confer jurisdiction on

federal courts.  *Ex parte McNeil*, 80 U.S. 236, 243 (1872); ("A State law cannot give

jurisdiction to any Federal court. . ."); *First Transit, Inc. v. City of Racine*, 359 F. Supp.

---

[1] Title VII includes caps on compensatory and punitive damages awards that increase
with the number of the defendant's employees. 42 U.S.C. § 1981a(b)(3).

2d 782, 785 (D. Wis. 2005) ("federal law controls this court's subject matter jurisdiction, and state law cannot expand or contract that grant of jurisdiction.").  Plaintiff's claim under the DDEA should, therefore, be dismissed.

8

**III.    THE COURT SHOULD NOT ACCEPT SUPPLEMENTAL
         JURISDICTION OVER PLAINTIFF'S COMMON LAW IMPLIED
         COVENANT OF GOOD FAITH AND FAIR DEALING CLAIM.**

The Third Circuit, in *Lyon v. Whisman & Associates, P.A.*, 45 F.3d 758

(3d Cir. 1995), held that the mere fact that several claims being asserted arise from the

employment relationship is insufficient justification for the exercise of supplemental

jurisdiction.  The facts of *Lyon* are instructive.  Plaintiff filed a claim under the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. § 207(a), alleging that the defendant employer failed

to pay her overtime as required by the FLSA.  She also brought state law contract and tort

claims for an alleged failure to pay a bonus.  A jury trial in this Court resulted in a verdict

for the plaintiff on all counts.  On appeal, the Third Circuit, *sua sponte*, found that the

District Court lacked jurisdiction over the state law claims.  The court pointed out that the

issue raised constitutional questions under Article III.  Supplemental jurisdiction was not

present because the claims did not arise out of a common nucleus of operative facts.  The

court noted that the general employer-employee relationship was not sufficient to

establish supplemental jurisdiction.  Id. at 763.

In *Lyon*, the court discussed several cases in which supplemental

jurisdiction was held to be inappropriate where, as in this case, the Plaintiff raised federal

employment discrimination claims and attempted to bootstrap federal jurisdiction for

state common law claims based on supplemental jurisdiction.  Id. at 763-64.  The court

observed that:

> [i]n declining to entertain state contract and fraud claims in
> a sexual discrimination suit, *Nicol [v. Imagematrix, Inc*,
> 767 F. Supp. 744 (E.D. Va. 1991)] pointedly noted that the
> sole common fact between the state and federal claims was
> the employment relationship. . . . District courts similarly
> have found that they did not have supplemental jurisdiction
> to entertain a variety of state claims in age discrimination

> cases. In *Mason v. Richmond Motor Co.* the court
> concluded it could not exercise supplemental jurisdiction
> over a state law breach of contract claim (based on an oral
> promise that the defendant would never fire the plaintiff) in
> an ADEA wrongful discharge suit. . . . 625 F. Supp. at 888.

*Lyon, id.*, 45 F.3d at 763.

In *DeRasmo v. Hospitality Franchise Systems, Inc.*, 1995 U.S. Dist. LEXIS 6349, (D. N.J. May 8, 1995), the court noted that "the Third Circuit views the exercise of supplemental jurisdiction as proper only in those cases where the state and federal claims 'are merely alternative theories of recovery based on the same act.'"(citation omitted), *26. *DeRasmo* was an ADEA case in which the court dismissed all state law claims, including breach of contract and implied covenant claims, because they "present entirely different elements of proof and theories of recovery." *Id.* at *28.

In *Lettich v. Kenway*, 590 F. Supp. 1225 (D. Mass. 1984), a suit against a law firm partnership and certain individuals under the ADEA, the court declined to exercise supplemental jurisdiction over an implied covenant of good faith claim and other state law claims because "trial of plaintiff's state law claims would involve complex and difficult issues of fact and law, and would go far beyond the scope of the detailed and comprehensive statutory scheme of the ADEA" and would create jury confusion. In addition, "the ADEA appears to be an exclusive remedy." 590 F. Supp at 1226.

The allegations of Count III are factually independent of the allegations necessary to prove an age discrimination claim, not "alternative theories of recovery based on the same act." Plaintiff's implied covenant claim asserts that he was terminated to prevent him from obtaining the fruits of his purported "contractual agreement" and was fraudulent. Complaint, ¶¶24-25. The facts concerning that claim can have nothing to do with Plaintiff's age discrimination allegations, which consist of allegations about

purported transfers of work to younger employees. Complaint, ¶¶12, 15. These assertions are unrelated to the supposedly "fraudulent" acts designed to deprive Plaintiff of the benefits of his "contract." Under the rationale set out by the Third Circuit in *Lyon*, there is no justification for this Court to retain jurisdiction over the common law claim, and Count III should be dismissed.

DB01:2087734.1                                                                                    044203.1023

**IV.    THE GENERAL ASSEMBLY EXPRESSED ITS INTENT THAT THE AMENDMENT TO THE DELAWARE DISCRIMINATION STATUTE PREEMPTED THE FIELD.**

Common law causes of action that run parallel to statutory discrimination claims are no longer viable in Delaware following the comprehensive amendments to Delaware's employment discrimination statute to create a private state-law cause of action. *EEOC v. Avecia, Inc.*, 2005 U.S. App. LEXIS 22157, *6 (3d Cir. Oct. 13, 2005) (citing *Lord v. Souder*, 748 A.2d 393, 400 (Del. 2000) and *E.I. DuPont de Nemours and Co. v. Pressman*, 679 A.2d 436, 442-44 (Del. 1996)).

In *Avecia*, the Third Circuit found that "in 2004 the Delaware legislature amended 19 <u>Del. C.</u> § 710 et seq., which prohibits discrimination in employment practices, in order to clarify that this statute was the 'sole remedy' for an aggrieved employee 'to the exclusion of **all other remedies.**'" *Avecia*, 2005 U.S. App. LEXIS 22157 at *7-8  (quoting 19 <u>Del. C.</u> § 712(b))(emphasis added).  The Third Circuit pointed out that "the synopsis of the Senate Bill [amending Section 712] expressly states disagreement with the Delaware Supreme Court's decision in *Schuster*, the decision that recognized a[n implied covenant] public policy claim for alleged gender bias:

> This bill confirms that Chapter 7 is the exclusive and sole remedy for employment discrimination claims, requiring initial processing of all such claims with the Department of Labor for review and action. This bill effectively re-establishes the exclusive remedy put in question by the decision in Schuster v. Derocili, 775 A.2d 1029 (2001).

*Id.*

Even before the statutory amendments to the state discrimination law, the Delaware Supreme Court had made clear that it was not expanding exceptions to the employment at will doctrine. *See Conneen v. MBNA Am. Bank, N.A.*, 334 F.3d 318, 334

12

(3d Cir. 2003) (explaining that Delaware courts have been reluctant to broaden the application of the implied covenant of good faith and fair dealing theory out of concern that the covenant "could swallow the doctrine of employment at will"); *Lord v. Souder*,748 A.2d 393, 401-03 (Del. 2000) (discussing exceptions to at-will employment doctrine as "narrow and discrete" and interpreting them to "prevent further erosion" of the doctrine).

The policy behind the pre-*Schuster* rulings in this Court, *see, e.g., Finch v. Hercules, Inc.,* 809 F. Supp. 309 (D. Del. 1992)(holding that ADEA preempts the field and rejecting attempt to bring implied covenant claim in reliance on the same facts), and in similar state court decisions, *see*, *e.g.*, *Ayres v. Jacobs & Crumplar, P.A.*, 1996 Del. Super. LEXIS 565, (Del. Super. Ct. 1996) ("it would be counter-productive to recognize a broader common law exception to the at-will doctrine when there exist elaborate statutory schemes at both the federal and state levels that address this same public policy concern") was that an implied covenant claim or other exception to employment at will should not be judicially created where there is an existing statutory remedy such as the ADEA or DDEA.  Given the Delaware Supreme Court's decisions limiting the expansion of common law exceptions to employment at will, and the stated policy of the legislative amendments reaffirming the prior rulings on the exclusivity of the statutory remedy, recognition of common law claims that are co-extensive with Plaintiff's statutory age discrimination claim is inapposite.

13

**CONCLUSION**

Counts II and III of the Complaint should be dismissed.


Respectfully submitted,


YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
Sheldon N. Sandler (No. 245)
The Brandywine Building, 17th Floor
1000 West Street, P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6673
Facsimile: (302) 576-3330
ssandler@ycst.com
Attorneys for Defendant


DATED:    May 17, 2006

14

## CERTIFICATE OF SERVICE

I, **Sheldon N. Sandler, Esquire**, hereby certify that on **Wednesday, May 17, 2006**, I electronically filed a true and correct copy of the foregoing **Defendants' Opening Brief in Support Of Their Motion to Dismiss,** which will send notification that such filing is available for viewing and downloading to the following counsel of record. A courtesy copy of such **Defendants' Opening Brief in Support Of Their Motion to Dismiss** was also hand delivered to the following counsel of record on this date.

> Gary W. Aber, Esquire
> Aber, Goldlust, Baker & Over
> 702 King Street, Suite 600
> P.O. Box 1675
> Wilmington, DE 19899-1675

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Sheldon N. Sandler, Esquire (No. 0245)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6673
Facsimile: (302) 576-3330
Email: ssandler@ycst.com
Attorneys for Defendant

DATED:    May 17, 2006

044203.1023

SPONSOR:   Sen. Marshall & Rep. Lofink

DELAWARE STATE SENATE

142nd GENERAL ASSEMBLY

SENATE BILL NO. 154

AN ACT TO AMEND TITLE 19 OF THE DELAWARE CODE RELATING TO DISCRIMINATION IN EMPLOYMENT.

BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF DELAWARE (Two-thirds of all members elected to each house thereof concurring therein):

Amend Subchapter II of Chapter 7, Title 19 of the Delaware Code, "Discrimination in Employment" by striking said Subchapter in its entirety and substituting in lieu thereof the following:

"Subchapter II. Discrimination in Employment.

§ 710. Definitions.

For the purposes of this subchapter:

(1) 'Age' as used in this subchapter means the age of forty (40) or more years of age.

(2) 'Employee' means an individual employed by an employer, but does not include:

a. Any individual employed in agriculture or in the domestic service of any person,

b. Any individual who, as a part of that individual's employment, resides in the personal residence of the employer,

c. Any individual employed by said individual's parents, spouse or child, or

d. Any individual elected to public office in the State or political subdivision by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate advisor with respect to the exercise of the constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include employees subject to the merit service rules or civil service rules of the State government or political subdivision.

(3) 'Employer' means any person employing four (4) or more employees within the State at the time of the alleged violation, including the State or any political subdivision or board, department, commission or school district thereof.

(4) 'Employment agency' means any person regularly undertaking with or without compensation to procure employees for an employer or to procure for employees opportunities to work for an employer and includes an agent of such a person.

(5) 'Genetic information' for the purpose of this chapter means the results of a genetic test as defined in § 2317(a)(3) of Title 18.

(6) 'Job related and consistent with business necessity' means the condition in question renders the individual unable to perform the essential functions of the position that such individual holds or desires. This includes situations in which the individual poses a direct threat to the health

or safety of himself/herself or others in the workplace

(7) 'Labor organization' includes any organization of any kind, any agency or employee representation committee, group, association or plan so engaged in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours or other terms or conditions of employment, any conference, general committee, joint or system board or joint council so engaged which is subordinate to a national or international labor organization.

(8) 'Person' includes 1 or more individuals, labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in bankruptcy or receivers.

(9) 'Religion' as used in this Subchapter includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that the employer is unable to reasonably accommodate an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business

(10) 'Secretary' means the Secretary of the Department of Labor or the Secretary's designee

(11) 'Charging Party' means any individual or the Department who initiates proceedings by the filing of a verified Charge of Discrimination, and who preserves a cause of action in Superior Court by exhausting the administrative remedies pursuant to the provisions of §714.

(12) 'Respondent' means any person named in the Charge of Discrimination, including but not limited to employers, employment agencies, labor organizations, joint labor-management committees, controlling apprenticeship or other training programs including on-the-job training programs.

(13) 'Mediation' for the purposes of this chapter refers to an expedited process for settling employment disputes with the assistance of an impartial third party prior to a full investigation.

(14) 'Conciliation' for the purposes of this chapter refers to a process which requires the appearance of the parties after a full investigation resulting in a final determination of reasonable cause.

(15) 'No Cause Determination' means that the Department has completed its investigation and found that there is no reasonable cause to believe that an unlawful employment practice has occurred or is occurring  A no cause determination is a final determination ending the administrative process and provides the Charging Party with a corresponding Delaware Right to Sue Notice

(16) 'Reasonable Cause Determination' means that the Department has completed its investigation and found reasonable cause to believe that an unlawful employment practice has occurred or is occurring  A reasonable cause determination requires the parties' good faith efforts in conciliation

(17) 'Delaware Right to Sue Notice' for the purposes of this chapter refers to a final acknowledgement of the Charging Party's exhaustion of the administrative remedies provided herein and written notification to the Charging Party of a corresponding right to commence a lawsuit in Superior Court.

§ 711. Unlawful employment practices; employer practices

(a) It shall be an unlawful employment practice for an employer to:

(1) Fail or refuse to hire or to discharge any individual or otherwise to discriminate against any individual with respect to compensation, terms, conditions or privileges of employment because of such individual's race, marital status, genetic information, color, age, religion, sex or national origin; or

(2) Limit, segregate or classify employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect the individual's status as an employee because of such individual's race, marital status, genetic information, color, age, religion, sex or national origin.

(b) It shall be an unlawful employment practice for an employment agency to fail or refuse to refer for employment or otherwise to discriminate against any individual because of race, marital status, genetic information, color, age, religion, sex or national origin or to classify or refer for employment any individual on the basis of race, marital status, genetic information, color, religion, age, sex or national origin.

(c) It shall be an unlawful employment practice for a labor organization to:

(1) Exclude or expel from its membership or otherwise to discriminate against any individual because of race, marital status, genetic

information, color, age, religion, sex or national origin;

(2) Limit, segregate or classify its membership or to classify or fail or refuse to refer for employment any individual in any way which would deprive or tend to deprive any individual of employment opportunities or would limit such employment opportunities or otherwise adversely affect the individual's status as an employee or as an applicant for employment because of such individual's race, marital status, genetic information, color, age, religion, sex or national origin; or

(3) Cause or attempt to cause an employer to discriminate against an individual in violation of this section.

(d) It shall be an unlawful employment practice for any employer, labor organization or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual because of race, marital status, genetic information, color, age, religion, sex or national origin in admission to or employment in any program established to provide apprenticeship or other training.

(e) It shall be an unlawful employment practice for an employer, employment agency, labor union or joint labor-management committee controlling apprenticeship or other training or retraining, including on the job training programs to intentionally collect, directly or indirectly, any genetic information concerning any employee or applicant for employment, or any member of their family, unless:

(1) It can be demonstrated that the information is job related and consistent with business necessity; or

(2) The information or access to the information is sought in connection with the retirement policy or system of any employer or the underwriting or administration of a bona fide employee welfare or benefit plan.

(f) It shall be an unlawful employment practice for any employer, employment agency, labor organization or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discharge, refuse to hire or otherwise discriminate against any individual or applicant for employment or membership on the basis of such person's race, marital status, color, age, religion, sex or national origin, because such person has opposed any practice prohibited by this subchapter or because such person has testified, assisted or participated in any manner in an investigation, proceeding, or hearing to enforce the provisions of this subchapter.

(g) Notwithstanding any other provision of this subchapter:

(1) It shall not be an unlawful employment practice for an employer to hire and employ employees, for an employment agency to classify or refer for employment any individual, for a labor organization to classify its membership or to classify or refer for employment any individual or for an employer, labor organization or joint labor-management committee controlling apprenticeship or other training or retraining programs to admit or employ any individual in any such program on the basis of religion, genetic information, age, sex or national origin in those certain instances where religion, genetic information, age, sex or national origin is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise; and

(2) It shall not be an unlawful employment practice for a school, college, university or other educational institution or institution of learning to hire and employ employees of a particular religion if such school, college, university or other educational institution or institution of learning is, in whole or in substantial part, owned, supported, controlled or managed by a particular religion or by a particular religious corporation, association or society or if the curriculum of such school, college, university or other educational institution or institution of learning is directed toward the propagation of a particular religion.

(h) Notwithstanding any other provision of this subchapter, it shall not be an unlawful employment practice for an employer to apply different standards of compensation or different terms, conditions or privileges of employment pursuant to a bona fide seniority or merit system or a system which measures earnings by quantity or quality of production or to employees who work in different locations, provided that such differences are not the result of an intention to discriminate because of race, marital status, genetic information, color, age, religion, sex or national origin, nor shall it be an unlawful employment practice for an employer to give and to act upon the results of any professionally developed ability test provided that such test, its administration or action upon the results is not designed, intended or used to discriminate because of race, marital status, genetic information, color, religion, age, sex or national origin.

(i) Nothing contained in this subchapter as it applies to discrimination because of age or sex shall be interpreted to affect or interfere with the retirement policy or system of any employer or the underwriting or administration of a bona fide employee welfare or benefit plan, provided that such policy, system or plan is not merely a subterfuge to evade the purpose of this subchapter.

(j)(1) Nothing in this subchapter shall be construed to prohibit compulsory retirement of any employee who has attained 65 years of age, and who, for the 2-year period immediately before retirement, is employed in a bona fide executive or a high policy-making position, if such employee is entitled to an immediate nonforfeitable annual retirement benefit from a pension, profit sharing, savings or deferred compensation plan, or any combination of such plans, of the employer of such an employee, which equals, in the aggregate, at least $44,000

(2) In applying the retirement benefit test or paragraph (1) of this subsection, if any such retirement benefit is in a form other than a straight life annuity (with no ancillary benefits), or if employees contribute to any such plan or make rollover contributions, such benefit shall be adjusted in accordance with regulations prescribed by the Secretary, United States Department of Labor, pursuant to 29 U S C. § 631(c)(2), so that the benefit is the equivalent of a straight life annuity (with no ancillary benefits) under a plan to which employees do not contribute and under which no rollover contributions are made

§ 712  Enforcement provisions; powers of the Department; administrative process.

(a) The Department of Labor is empowered, as hereinafter provided, to prevent any person from engaging in any unlawful employment practice as set forth in §§ 711, 723 and 724 of this title. In connection with the performance of its duties, the Department may:

(1) investigate employment practices by permitting the Department to enter any place of employment at reasonable times; inspect and copy records or documents in the possession of the employer, the employment agency or labor organization; administer oaths, certify to official acts, take and cause to be taken depositions of witnesses; issue subpoenas compelling the attendance and testimony of witnesses and the production of papers, books, accounts, payrolls, documents, and records;

(2) make, revise or rescind such rules or regulations necessary or appropriate to administer or enforce this chapter in accordance with the provisions of 29 Del  C  § 10161 (b) of the Delaware Code;

(3) commence civil actions in Superior Court for violations of this chapter, any published regulations or for civil penalties provided herein.

(b) The Department shall have jurisdiction over all cases arising under this chapter, affording review and oversight of employment practices in Delaware. The Department shall endeavor to eliminate unlawful discrimination in employment through its administrative process set forth below. This subchapter shall afford the sole remedy for claims alleging a violation of this chapter to the exclusion of all other remedies. Upon termination of the administrative process by the Department, the Charging Party may institute a civil action in Superior Court of the State of Delaware pursuant to §§ 714,715.

(c) The administrative process requires the following:

(1) Statute of limitation and filing procedure. Any person claiming to be aggrieved by a violation of this chapter shall first file a Charge of Discrimination within 120 days of the alleged unlawful employment practice or its discovery, setting forth a concise statement of facts, in writing, verified and signed by the Charging Party. The Department shall serve a copy of the verified Charge of Discrimination upon the named Respondent by certified mail. The Respondent may file an answer within twenty (20) days of its receipt, certifying that a copy of the answer was mailed to the Charging Party at the address provided.

(2) Preliminary findings and recommendations. The Department shall review the submissions within sixty (60) days from the date of service upon the Respondent and issue preliminary findings with recommendations. The preliminary findings may recommend: (i) dismissing the Charge unless additional information is received which warrants further investigation; (ii) referring the case for mediation requiring the parties' appearance; or (iii) referring the case for investigation.

(3) Final determinations upon completion of investigation. After investigation, the Department shall issue a Determination of either "Reasonable Cause" or "No Reasonable Cause" to believe that a violation has occurred or is occurring. All cases resulting in a "Reasonable Cause" Determination will require the parties to appear for compulsory conciliation. All cases resulting in a "No Cause" Determination will receive a corresponding Delaware Right to Sue Letter.

(4) Confidentiality of the Department's process. The Department shall not make public the charge of discrimination or information obtained during the investigation of a charge. This provision does not apply to disclosures made to the parties, their counsel, or witnesses where disclosure is deemed necessary or appropriate. Nothing said or done during and as a part of the mediation or conciliation efforts may be made public by the Department, its officers or employees or used by any party as evidence in a subsequent proceeding without the written consent of the persons concerned.

(5) End of administrative process. In all cases where the Department has dismissed the Charge, issued a No Cause Determination or upon the parties failed conciliation efforts, the Department shall issue a Delaware Right to Sue Notice, acknowledging the Department's termination of the administrative process. Once the Department has issued its preliminary findings pursuant to subsection (2), the Department, in its discretion, may grant a Delaware Right to Sue Notice to a Charging Party.

§ 713  Civil action by the Attorney General; complaint.

(a) Whenever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by this subchapter or subchapter III of this chapter and that the pattern or practice is of such a nature and is intended to deny the full exercise of the rights herein described, the Attorney General may bring a civil action in the

Court of Chancery by filing with it a complaint:

(1) Signed by the Attorney General (or in the Attorney General's absence the Chief Deputy Attorney General);

    (2) Setting forth facts pertaining to such pattern or practice; and

(3) Requesting such relief, including an application for a permanent or temporary injunction, restraining order or other order against the person or persons responsible for such pattern or practice, as the Attorney General deems necessary to insure the full enjoyment of the rights herein described.

(b) The Court of Chancery shall have jurisdiction over proceedings brought pursuant to this section.

§ 714. Civil action by the Charging Party; Delaware Right to Sue Notice; election of remedies

(a) A Charging Party may file a civil action in Superior Court, after exhausting the administrative remedies provided herein and receipt of a Delaware Right to Sue Notice acknowledging same.

(b) The Delaware Right to Sue Notice shall include authorization for the Charging Party to bring a civil action under this Chapter in Superior Court by instituting suit within ninety (90) days of its receipt or within ninety (90) days of receipt of a Federal Right to Sue Notice, whichever is later.

(c) The Charging Party shall elect a Delaware or federal forum to prosecute the employment discrimination cause of action so as to avoid unnecessary costs, delays and duplicative litigation. A Charging Party is barred by this election of remedies from filing cases in both Superior Court and the federal forum. If the Charging Party files in Superior Court and in a federal forum, the Respondent may file an application to dismiss the Superior Court action under this election of remedies provision.

§ 715. Judicial remedies; civil penalties.

Superior Court shall have jurisdiction over all proceedings brought by the Charging Party pursuant to § 714. Superior Court may excuse a Charging Party who has complied with the compulsory conciliation provisions of this chapter from the compulsory arbitration provisions of Superior Court rule.

(a) Superior Court shall have the authority to provide the following relief, including but not limited to: (1) order the Respondent to cease and desist or modify its existing employment policies; (2) order the Respondent to hire, reinstate or promote the Charging Party; (3) order the payment of compensatory damages, including but not limited to general and special damages, punitive damages when appropriate, not to exceed the damage awards allowable under Title VII of the Civil Rights Act of 1964, as amended, provided that for the purposes of this subchapter, employers with 4-14 employees shall be treated under Title VII's damage award as an employer having under 50 employees; and (4) order the costs of litigation and reasonable attorney's fees to the prevailing party.

(b) In any action brought by the Department for violation of the retaliation provision of section 711(f), the Court shall fine the employer not less than $1,000 nor more than $5,000 for each violation, in addition to any liability for damages.

§ 716. Posting of notices; penalties.

(a) Every employer, employment agency and labor organization, as the case may be, shall post and keep posted in conspicuous places upon its premises where notices to employees, and applicants for employment are customarily posted, a notice to be prepared or approved by the Department setting forth excerpts from or summaries of the pertinent provisions of this subchapter and subchapter III of this chapter and information pertinent to the filing of a complaint.

(b) A willful violation of this section shall be punishable by a fine of not more than $100 for each separate offense.

§ 717. Veterans' special rights or preference

Nothing contained in this subchapter or subchapter III of this chapter shall be construed to repeal or modify any state or local law creating special rights or preferences for veterans.

§ 718. Short title, effective date, savings clause.

    (a) This subchapter may be cited as the "Discrimination in Employment Act."

(b) This Act shall become effective sixty (60) days after its enactment into law.

(c) This Act does not affect any cause of action or the remedy provided therefor if such cause of action accrued and suit was instituted thereon prior to the effective date of this Act.

## SYNOPSIS

This bill eliminates the Equal Employment Review Board, and creates a corresponding Delaware Right to Sue in Superior Court after exhausting Administrative remedies. This bill confirms that Chapter 7 is the exclusive and sole remedy for employment discrimination claims, requiring initial processing of all such claims with the Department of Labor for review and action. This bill effectively re-establishes the exclusive remedy put in question by the decision in Schuster v. Derocili, 775 A. 2d 1029 (2001).

Some definitions have been added to section 710, specifically new terms such as "No Cause Determination"; "Reasonable Cause Determination"; "Charging Party"; "Respondent"; "Delaware Right to Sue Notice"; "Mediation"; and "Conciliation". Sections 712, 714 and 715 have been repealed in their entirety and rewritten to accomplish the goals of initially pursuing informal methods of resolution through mediation and conciliation and then permitting civil actions in Superior Court.

Author: Senator Marshall