IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

CLYDE E. MEASE, JR.,                    )
                                        )
            Plaintiff,                  )       C.A. No.: 06-271 (SLR)
                                        )
      v.                                )
                                        )       Trial By Jury Demanded
WILMINGTON TRUST COMPANY                )
                                        )
            Defendant.                  )

## PLAINTIFF'S ANSWERING BRIEF IN
## OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

GARY W. ABER (DSB #754)
Aber, Goldlust, Baker & Over
First Federal Plaza, Suite 600
702 King Street, P.O. Box 1675
Wilmington, DE  19899
302-472-4900
Attorney for Plaintiff

DATED:  June 2, 2006

## TABLE OF CONTENTS

**Page No.**

TABLE OF CITATIONS      3

NATURE AND STAGE OF PROCEEDINGS      6

STATEMENT OF RELEVANT FACTS      7

SUMMARY OF ARGUMENT      8

ARGUMENT

     I.      THE APPLICABLE STADARD FOR A
DEFENDANT'S MOTION TO DISMISS      9

     II.      THIS COURT HAS JURISDICTION TO
DECIDE CLAIMS UNDER DELAWARE
STATE STATUTE 19 DEL.C. §710 ET.SEQ.
("DISCRIMINATION IN EMPLOYMENT") BASED
UPON ITS SUPPLEMENTAL JURISDICTION      10

     III.      THE COURT SHOULD ACCEPT SUPPLEMENTAL
JURISDICTION OVER THE PLAINTIFF'S CLAIMS
BASED UPON THE COVENANT OF GOOD
FAITH AND FAIR DEALING, AND A BREACH
OF CONTRACT.      15

     IV.      THE ENACTMENT OF 19 DEL.C. §710 ET.SEQ
DOES NOT PREEMPT "CLAIMS FOR BREACH OF
THE COVENANT OF GOOD FAITH AND FAIR
DEALING BASED UPON "FRAUD, DECIET, OR
MISREPRESENTATION.      22

CONCLUSION      24

## TABLE OF CITATIONS

**Page No.**

Alexander v. Whitman
    114 F.3d 1392, 1397 (3d Cir. 1997)    9

Conneen v. MBNA America Bank, N.A.,
    334 F.3d 318 (3d Cir. 2003)    23

DeRasmo v. Hospitality Franchise Systems, Inc.
    1995 WL 274501 (D.J.J. May 8, 1995)    16

EEOC v. Avecia, Inc.
    151 F.E.D. Appx. 162;
    2005 WL 2562617 (3d Cir. 2005)    22

E.I. DuPont de Nemours & Co. v. Pressman
    679 A.2d 436 (Del. 1996)    16,18,22,24

Fasold v. Justice
    409 F/3d 178, 183-148 (3d Cir. 2005)    17

Finch v. Hercules, Inc.
809 F.Supp. 309 (D.Del. 1992)    11

Fuentes v. Perskie
    32 F.3d 759 (d Cir. 1994)    17, 18, 19

Gagliardo v. Connaught Laboratories, Inc.
    311 F.3d 565 (3d Cir. 2002)    13

Hague v. Brandywine School District
    131 F.Supp.2d 573 (D.Del. 2001)    10

Haines v. Kerner
    404 U.S. 519, 521, 92 S.Ct. 594
    30 L.Ed.2d 652 (1972)    9

Harrison v. Board of Education
    1996 WL 182559 (N.D. Ill. 1996)    20

Hirschinger v. Allstate Insurance Co.
    844 F.Supp. 317 (S.D. Ind. 1994)    17

In Re: Burlington Coat Factor Sec. Litigation
  114 F.3d 1410, 1420 (3d Cir. 1997)     9, 23

Itar-Tass Russian News Agency v. Russian Curier, Inc.
  140 F.3d 442, 447 (2d Cir. 1998)     16

Kehr Packages, Inc. v. Fidel Core, Inc.
  926 F.2d 1406, 1409 (3d Cir. 1991)     9

Lettich v. Kenway
  590 F.Supp. 1225, 1226 (D.Mass. 1984)     17

Lomax v. Nationwide Mutual Insurance Company
  964 F.2d 1343, 1346 (1992)     10

Lyon v. Whisman
  45 F.3d 758 (3d Cir. 1995)     20, 21

McDonnell Douglas Corp v. Green
  411 U.S. 792, 96 S.Ct. 1817
  36 L.Ed.2d 668 (1973)     17

Merrill v. Crothall-American, Inc.
  606 A.2d 96 (Del. 1992)     16

Mullen v. Thompson
  155 F.Supp.2d 448 (W.D.Pa. 2001)     19

New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.
  101 f.3d 1492 (3d Cir. 1996)     16, 21

Potence v. Hazleton Area School District
  357 F.3d 366, 372 (3d Cir. 2004)     11

Rodriguez-Torres v. Caribbean Forms Manufacturer, Inc.
  399 F.3d 52, 65-66 (1st Cir. 2005)     13

Schuster v. Derocili
  775 A.2d 1029 (D.Del. 2001)     24

Starceski v. Westinghouse Electric Corporation
  54 F.3d 1089, 1100 (3d Cir. 1995)     10

Stepler v. Avecia, Inc.
  2004 WL 1635528 (3d Cir. 2005).     23

<u>Surprise v. GTE Service Corporation</u>
47 F.Supp.2d 240, 243 (D.Conn. 1999)      20

<u>Tomasso v. Boeing Corp.</u>
445 F.3d 702 (3d Cir. 2006)      17

<u>Trump Hotels and Casino Resorts v. Mirage Resorts, Inc.</u>
140 F.3d 478, 483 (3d Cir. 1998)      9

<u>United Mine Workers of America v. Gibbs</u>
383 U.S. 715, 276, 86 SCt. 1130,
16 L.Ed.2d 218 (1666)      17

<u>Wehr v. Burroughs Corp.</u>
619 F.2d 276, 284 (3d Cir. 1980)      10

## NATURE AND STAGE OF THE PROCEEDINGS

The complaint in this matter was filed on May 3, 2006, alleging a violation of 29 U.S.C. §621 et.seq. ("ADEA").  The complaint also alleged a violation of Delaware State Law, 19 Del.C.§710 et.seq. ("Discrimination in an Employment Act") as well as a violation of Delaware's Common Law, including the "Covenant of Good Faith and Fair Dealing".

The defendant has filed a motion to dismiss the state claims in this matter.[1]  This is the plaintiff's answering brief in opposition to the defendant's motion to dismiss.

---

[1] The counsel representing the defendant's in this matter, also represent the defendant in Paul v. Deloitte & Touche, LLP, et.al., C.A. No.: 06-225 (KAJ).  In that matter, the defendant has filed a motion making many of the same arguments as being made here (Dk-5 & 6).

## STATEMENT OF RELEVANT FACTS

The plaintiff, is a citizen of the United States, who, at the date of the matters alleged in the complaint was 54 years of age. (Complaint, ¶8).[2]

At the time of the relevant facts in this matter, the plaintiff had been employed by the defendant since 1983, most recently as vice-president (¶9). At all times during his employment, the plaintiff's work had been evaluated as "excellent" (¶10).

On December 2, 2004, without prior notice the plaintiff was terminated allegedly for a violation of policy and procedures of the defendant (¶11). After the plaintiff's termination his work had be distributed to co-workers who were substantially younger than the plaintiff. (¶12).

Subsequent to his termination the plaintiff applied for unemployment benefits under the laws of the State of Delaware (¶13). During the proceedings before the Delaware Department of Labor for unemployment benefits, although the defendant had stated that the reason for the plaintiff's termination was his violation of the defendant's policies and procedures (¶11 & 15), the defendants failed or refused to present any evidence supporting its claim of violations of any policies or procedures, which indicates that the termination of the plaintiff was in bad faith, intentional and willful (¶14). The actions of the defendant were arbitrary and unreasonable in an effort to prevent him from obtaining the fruits of his contractual agreement with the defendant (¶24), and resulted in the termination of the plaintiff, based upon fraud, deceit and misrepresentations. (¶25).

---

[2] References to the Complaint will be made as (¶   ).

## SUMMARY OF ARGUMENT

I.     This Court has jurisdiction to decide claims under the Delaware State Statute prohibiting age discrimination, 19 Del.C. §710 et.seq., under its supplemental jurisdiction, 28 U.S.C. §1367. The Delaware State Legislature, in enacting that statute prohibited two separate lawsuits from being filed in two separate "forums". The enacted statute does not prohibit one action asserting claims under both Federal and State statutes. This is appropriate since those two statutes provide separate and distinct relief under each.

II.     This Court should exercise its supplemental jurisdiction under 28 U.S.C. §1367 since the claims under the Federal statute will involve a common nucleus of facts as the claims brought under the state statute. The facts which would be asserted to prove claims of the state statute would be used to prove "pretext" under the Federal discrimination claims, and thus, judicial economy would be served by the exercise of supplemental jurisdiction.

III.     The Delaware State Legislature, in enacting the state statute prohibiting age discrimination, did not preempt common law claims for the breach of the covenant of good faith and fair dealing, where such claims were distinct and separate from claims of age discrimination. The facts used to prove the pretextual proof of age discrimination would be the same facts used to prove fraud, deceit and misrepresentation under a breach of the covenant claim. Thus, the jurisdiction of this Court to consider state claims related to the claims over which this Court has original jurisdiction is mandated by 28 U.S.C. §1367.

**ARGUMENT**

## I.    THE APPLICABLE STANDARD FOR A DEFENDANT'S MOTION TO DISMISS

On a defendant's motion to dismiss, the Court is required to accept as true all the material allegations in the complaint. Trump Hotels and Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998).  The Complaint should be dismissed only if, after accepting as true all the facts alleged in the complaint, and, reviewing all reasonable inferences, in favor of the plaintiff, the Court could not grant relief under any set of facts consistent with the allegations of the complaint. Id.  In order to grant a motion to dismiss, the Court must determine that the moving party is entitled to no relief under any reasonable reading of the pleadings, assuming the truth of all the factual allegations in the complaint. Alexander v. Whitman, 114 F.3d 1392, 1397 (3d Cir. 1997).

A court may dismiss a complaint only where the movant can establish beyond a doubt that the plaintiff can prove no set of facts upon which it is entitled to relief. Haines v. Kerner, 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). The party seeking the dismissal that is the moving party, at all times has the burden of persuasion. Kehr Packages, Inc. v. Fidel Core, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991). The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence in support of the claims. In Re: Burlington Coat Factory Sec. Litigation, 114 F.3d 1410, 1420 (3d Cir. 1997).

II.    **THIS COURT HAS JURISDICTION TO DECIDE CLAIMS UNDER DELAWARE STATE STATUTE 19 <u>DEL C</u>. §710 ET.SEQ. ("DISCRIMINATION IN EMPLOYMENT") BASED UPON ITS SUPPLEMENTAL JURISDICTION**

The plaintiff in this matter has invoked, in his Complaint, the jurisdiction of this Court to hear State claims under its supplemental jurisdiction, 28 <u>U.S.C.</u> §1367. Count II of the Complaint, specifically makes allegations that there are violations of the Delaware "Discrimination In Employment Act", 19 <u>Del.C</u>. §711 et.seq. The defendant does not dispute that the state law statutory claims are not so related to the claims brought under the Federal statute, of which this Court has original jurisdiction, that they do not form part of the same case or controversy, 28 <u>U.S.C.</u> §1367(a). Thus, this Court would have grounds for supplemental jurisdiction, <u>Hague v. Brandywine School District</u>, 131 F.Supp.2d 573 (D.Del. 2001), unless it is otherwise deprived of jurisdiction.

A proper reading of 19 <u>Del.C</u>. §714 (c) clearly demonstrates that the purpose of that statute is to prevent an employee, who would be the charging party, from pursuing two simultaneous lawsuits in both the State Court and the Federal Court. It provides for only a basis for dismissal of a Superior Court action. The statute makes no provision for any action in the Federal Court. The state statute prohibits two lawsuits in two Courts, It does not prohibit one lawsuit in this Court, with both Federal and State claims.

It is clear that the Federal statute, and the State statute, while both addressing the wrong of age discrimination, provide different, but parallel relief. Under the ADEA, a claimant is entitled to only "make whole" damages, and is not entitled to recover in excess of such damages. <u>Starceski v. Westinghouse Electric Corporation</u>, 54 F.3d 1089, 1100 (3d Cir. 1995). As such, under the ADEA, damages for pain and suffering

are not available. <u>Wehr v. Burroughs Corp.</u>, 619 F.2d 276, 284 (3d Cir. 1980). However, under the Delaware State statute, a prevailing plaintiff is entitled to recover compensatory damages including general damages.  Under Delaware Law, general damages include damages for pain and suffering. <u>Lomax v. Nationwide Mutual Insurance Co.</u>, 964 F.2d 1343, 1346 (1992) (Applying Delaware law in a diversity action).

In light of the two separate statutory schemes, it is clear that under the Federal ADEA statute, there is a Federal policy, that for age discrimination, employees suffering discrimination can receive only their lost monetary damages or wages, or, in situations where it is demonstrated that the discrimination is willful, additional liquidated damages, under the "FLSA" scheme, 29 <u>U.S.C.</u> §§211(b) et.seq., 626(b); <u>Potence v. Hazleton Area School District</u>, 357 F.3d 366, 372 (3d Cir. 2004).

At the same time the Delaware Legislature has enacted its statute, which includes age as a prohibited basis of discrimination with all other forms of discrimination 19 <u>Del.C.</u> §711 (a)(1).  This is in contrast to the Federal scheme in which the general employment discrimination statute, "Title VII", 42 <u>U.S.C.</u> §2000e, does not include age. Rather in the Federal scheme the prohibition against age discrimination is contained in its own separate statute under the "FLSA" scheme.

Under the Delaware State scheme, victims of discrimination are entitled to receive general damages, including pain and suffering, 19 <u>Del.C.</u> §715 (1)c.  Thus, Delaware State Law provides additional rights and remedies not available under Federal Law, but which are related to the claims under the Federal statute, and "...form

part of the same case or controversy...". 28 U.S.C. §1367(a).[3]  Thus, the proof of

liability for age discrimination would involve the same common facts under both the

Federal and the State statutes.  Only the damages for the violations are different.

The defendant's contention that this Court must dismiss this action based upon

the incorrect assumption that the Delaware Statute does not permit simultaneous claims

under both the Federal and State Statute.  Relying upon the provisions of 19 Del.C.

§714(c) the defendant incorrectly interprets the prohibition against simultaneous

lawsuits in the Federal and State Court, and the requirement of that statute to select a

single "**forum**" to prohibit the recovery of separate relief under both statutes.

The provisions of the Delaware Statute provides:

> "(c) The charging party shall elect a Delaware or Federal **forum** to
> prosecute the employment discrimination cause of action so as to
> avoid unnecessary costs, delays and duplicative litigation.  A charging
> party is barred by this election of remedies from filing cases in both
> Superior Court and the Federal **forum**. If the charging party files in
> Superior Court, and in a Federal **forum**, the respondent may file a
> motion to dismiss the Superior Court action under this election of
> remedies section. 19 Del.C. §714 (c) (Emphasis Added).

The relief sought by the plaintiff in this case is not contradictory or duplicative.

Rather, it is more correctly stated as parallel and compatible.  Under the Federal

statute, the plaintiff would recover his economic damages in the form of lost wages.

Under the State statute, the plaintiff would recover any general or pain and suffering

damages.  Such relief would not result in the duplicative or simultaneous relief sought to

be prevented by 19 Del.C. §714(c).

---

[3]  The Delaware State Statute, is a recent enactment, which may well have been
partially in response to this Court's ruling in Finch v. Hercules, Inc., 809 F.Supp. 309
(D.Del. 1992), which held that the predecessor Delaware Statute did not provide a basis
for a cause of action or claim of damages for age discrimination.

The actual objection raided by the defendant seems to be pursuing Federal Court relief for age discrimination at the same time under both the Federal statute and the Delaware State statute, for the same factual occurrences. However, it is not uncommon for a victim of discrimination to pursue in Federal Court and obtain relief under both Federal and State statutes for the same wrong. See: Rodriguez-Torres v. Caribbean Forms Manufacturer, Inc., 399 F.3d 52, 65-66 (1st Cir. 2005) (citing numerous decisions in which Federal Courts have had to allocate damages awarded between Federal and State statutes). The Third Circuit Court of Appeals has addressed this very situation in Gagliardo v. Connaught Laboratories, Inc., 311 F.3d 565 (3d Cir. 2002). In that case, in a suit brought under the "Americans With Disabilities Act", the Federal Statute, and the "Pennsylvania Human Relations Act", the State Statute, the jury awarded $2,000,000 in compensatory damages and $500,000 in punitive damages. After trial the District Court apportioned the punitive damages of the Federal Statute and reduced them to the $300,000 statutory cap, but apportioned all of the $2,000,000 to the State statute, which did not have a cap. The Court specifically held that the limitations on damages under the applicable Federal Statute, 42 U.S.C.§1981(a), did not prevent the plaintiff from recovering greater damages under State law that was virtually identical to the Federal claim. The Court concluded its decision, that by permitting the parallel relief under both the Federal and State statutes, the plaintiff would benefit from the remedy provided by State law, and such relief would not conflict with any Congressional purposes limiting Federal awards. Gagliardo, supra, at p. 572. Similarly, here the recovery by the plaintiff of economic damages under the Federal statute, and general damages under the State statute, does not contravene either statute.

The claim by the defendant that the State statute provides that the "Superior Court shall have the authority to provide the following relief..." 19 Del.C. §715(b) means that only the Superior Court has exclusive jurisdiction is a misreading of the purposes of the statute.    As shown above, the purpose of 19 Del.C. §714(c) is to prevent simultaneous duplicative suits in both Federal and State Court.    The provision of 19 Del.C. §715(b) giving jurisdiction to the Superior Court to hear State claims is a necessity, given the State of Delaware bifurcated judicial system separating equitable claims in the Court of Chancery, Delaware Constitution of 1897, Article IV, §§1, 5, 10 Del.C. §301 et.seq. from legal claims in the Superior Court, Delaware Constitution of 1897, Article IV, §§1, 7, 10 Del.C. §501 et.seq.    The statute giving individuals the right to bring State causes of action would have to specify which State Court had the authority to hear the claims, but by doing so, the statute does not give exclusive jurisdiction to the Superior Court.

For these reasons, the plaintiff's claim should be permitted to proceed in Federal Court asserting original jurisdiction over its "ADEA" claims and supplemental jurisdiction over the claims arising under the Delaware State Statute.

### III.    THE COURT SHOULD ACCEPT SUPPLEMENTAL JURISDICTION OVER THE PLAINTIFF'S CLAIMS BASED UPON THE COVENANT OF GOOD FAITH AND FAIR DEALING, AND BREACH OF CONTRACT

The defendants attempt to dismiss the supplemental state claims in this matter was made without consideration for the statute, which grants this Court jurisdiction. The applicable provisions of that statute provide as follows:

> "...[I]n any civil action of which the District Courts have original jurisdiction, the District Court **shall** have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that the form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. §1367(a)(omitting inapplicable language)(Emphasis added).

None of the exceptions of that statute contained in sub-parts (b) and (c) are applicable to this action. Rather, the statute continues that this Court can decline to exercise supplemental jurisdiction if:

> "(1)    The claim raises a novel or complex issue of State law.
>
> (2)    The claim substantially predominates over the claim or claims over which the District Court has original jurisdiction,
>
> (3)    The District Court has dismissed all claims over which it has original jurisdiction, or
>
> (4)    In exceptional circumstances there are other compelling reasons for declining the jurisdiction. " 28 U.S.C. §1367(c)

As will be demonstrated the State non-statutory claims, for breach of the covenant of good faith and fair dealing, and for breach of contract, do not present complex issues of State Law. Nor do the state claims predominate over the claims under which this Court has Federal jurisdiction (The "ADEA"). The District Court has not dismissed the claims over which it has original jurisdiction, and no exceptional circumstances presently exist. Rather, once this Court determines that the supplemental claims are related to the claim

upon which original Federal Jurisdiction exists, such as to form the same case or controversy, the exercise of supplemental jurisdiction over the related claim is mandatory. Itar-Tass Russian News Agency v. Russian Curier, Inc., 140 F.3d 442, 447 (2d Cir. 1998)(holding that the failure of the lower court to exercise supplemental jurisdiction was error). The mandatory nature of 28 U.S.C. §1367 has been recognized by commentators. David Siegal, Practice Commentary "The 1990 Adoption of §1367, Codifying 'Supplemental Jurisdiction'." 28 U.S.C. §1367, at p. 831; (cited with approval, New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc., 101 F.3d 1492 [3d Cir. 1996]).

The first exception to the exercise of supplemental jurisdiction, 28 U.S.C.§1367(c)(1) clearly is not applicable. The remaining state claims are for breach of contract, clearly not a novel matter, and a breach of the Covenant of good faith and fair dealing, which has been the subject of significant litigation in the Delaware Courts. Lord v. Souder, 748 A.2d 393 (Del. 2000); E.I.DuPont De Nemours & Co. v. Pressman, 679 A.2d 436 (1996); Merrill v. Crothall-American, Inc., 606 A.2d 96 (Del. 1992).

Contrary to the authority relied upon by the defendant, DeRasmo v. Hospitality Franchise Systems, Inc., 1995 WL 274501 (D.N.J. May 8, 1995) (Attached hereto as Exhibit "A")(dismissing a supplemental state claim after  Federal claims had been dismissed),  the defendant has not sought dismissal of the Federal claims, nor has this Court dismissed them. Thus the exception under 28 U.S.C.§1367(3) is not applicable. The only issue that remains is whether or not the State claims predominate over the Federal claims or if there are  exceptional circumstances. Here, the allegations of age discrimination under the "ADEA" evolve out of the same facts, which would support the

State claims for the breach of the "covenant of good faith and fair dealing" and the breach of contract claim.[4]

The defendants' reliance upon <u>Lettich v. Kenway</u>, 590 F.Supp. 1225, 1226 (D.Mass 1984), is inappropriate since it was decided before the enactment of 28 U.S.C.§1367 (1990). Rather, <u>Lettich</u> was decided under the Supreme Court Rule laid down in <u>United Mine Workers of America v. Gibbs</u>, 383 U.S. 715, 276, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)(holding that the then doctrine of Pendent Jurisdiction was a doctrine of discretion and not of right). By comparison, the rule set down in 28 U.S.C.§1367 is mandatory, <u>Itar-Tass</u>, supra, unless a specific exception applies.

It is clear that the facts and circumstances that support the ADEA claim, and the state breach of the covenant and good faith, claim and breach of contract claim are inextricably intertwined. To prove the claims for age discrimination, the plaintiff would utilize the discrimination framework under <u>McDonnell Douglas Corp v. Green</u>, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); <u>Fasold v. Justice</u>, 409 F.3d 178, 183-184 (3d Cir. 2005). If the plaintiff is able to prove a prima facie case under the <u>McDonnell Douglas</u> framework, then the defendants would have to produce a non-discriminatory reason for his termination. However, at that point, if the plaintiff can demonstrate that the non-discriminatory reasons are pretextual, that is characterized by implausibilities and inconsistencies, <u>Fuentes v. Perskie</u>, 32 F.3d 759 (3d Cir. 1994); <u>Tomasso v. Boeing</u>

---

[4] Compare: <u>Hirschinger v. Allstate Insurance Co.</u>, 884 F.Supp. 317 (S.D.Ind. 1994)(holding that where the Federal claims have nothing to do with the State claims, arise at different times, and out of different relationships, supplemental jurisdiction is inappropriate). In the instant case the operative facts, which substantiate the ADEA claim, are the same facts as will be shown, infra., to prove the breach of the covenant of good faith and fair dealing claims and breach of contract claim.

Corp., 445 F.3d 702 (3d Cir. 2006)(applying <u>Fuentes</u> to age discrimination cases) then a jury issue would have been created. <u>Id.</u>

     The facts set forth in the complaint demonstrate that the plaintiff had, throughout his history of employment with Wilmington Trust, excellent evaluations. Without warning, he was terminated for allegedly violating the policies of his employer. However, when the employer was put the issue of stating what those policies were, before the Delaware Department of Labor, they declined and/or refused to do so. The evidence in this matter to demonstrate that the proffered non-discriminatory reason for the termination of Mr. Mease, that is the violations of policies and procedures of the defendant, may well be pretext, and used to support proof under the <u>Fuetes v. Perskie</u> rule. These facts would demonstrated, under a breach of the good faith and fair dealing and breach of contract claims if the plaintiff's termination violated those rules. That is, the mechanism by which it would be demonstrated that the allegation that he violated policies and procedures of the defendant would likewise be able to prove a violation of the covenant of good faith and fair dealing, a breach of which would also constitute evidence of pretext. Thus, the methods by which the defendant terminated the plaintiff's employment would be as a result of either fraudulent conduct, deceit, or factual misrepresentations, all of which constitute a breach of the covenant of good faith and fair dealing, <u>E.I.DuPont De Nemours & Co. v. Pressman</u>, supra. Thus, the facts that would prove the breach of contract and/or breach of covenant of good faith and fair dealing, would also be evidence of pretext used to provide discrimination under the ADEA.

Equally important is that the complaint alleges, in support of the claim for the breach of the covenant of good faith and fair dealing (Count III, ¶44-45) that the defendants' arbitrary and unreasonable conduct were a breach of the contractual agreement, and were the result of fraud, deceit, and misrepresentation. The breach of the contractual obligations, which, as shown above, may be evidence of discrimination, and also might show that the statements made by the defendants were misrepresentations, fraudulent and deceitful (i.e. lack of performance), used to attempt to justify plaintiff's termination.

The result of the defendant's argument that this Court should not assert jurisdiction over the state claims pursuant to supplemental jurisdiction raises the spectre that there will be duel litigation concerning the plaintiff's termination, in both the Federal and State Courts. There would be two sets of discovery, two sets of depositions, two separate motions for summary judgment (assuming the defendant files the customary strategy of defense in employment cases and filing such motion), and, a potential of two separate trials, all involving the same set of circumstances. Obviously this is not an economical use of judicial resources.

> "Supplemental jurisdiction is designed to permit the parties
> to resolve, in one judicial proceeding, all claims arising out of a
> common nucleus of operative facts, without regard to their Federal
> or State character. The purpose of supplemental jurisdiction is to
> promote convenience and efficient judicial administration. Mullen v.
> Thompson, 155 F.Supp.2d 448 (W.D.Pa. 2001).

Accordingly, the same evidence used to prove pretext in an age discrimination case, under Fuentes v. Perskie, supra., would also serve of evidence for a breach of the "covenant of good faith and fair dealing, as well as a breach of the contractual rights and obligations between the parties.

Another District Court, faced with almost an identical situation as here, found that state claims for breach of the covenant of good faith, and a breach of contract, were, while separate from the Federal claims under the ADEA   constituted an "...'interlocking series of transactions' related to plaintiff's termination and attempts to seek re-employment with the defendant. and thus 'substantially derived from the same facts'." Surprise v. GTE Service Corporation, 47 F.Supp.2d 240, 243 (D.Conn. 1999); (relying upon Harrison v. Board of Education, 1996 WL 182559 (N.D. Ill. 1996)(Attached hereto as Exhibit "B")(holding that a public teacher's state claim based upon violation of a tenure statute was part of an interlocking transaction that implicated Federal claims based upon age discrimination).

In Surprise, the procedural disposition of the case, was different than here presented.    There, the plaintiff had filed initially in State Court, alleging both Federal (ADEA) claims and State claims (breach of contract and breach of the covenant of good faith and fair dealing).  The defendant, pursuant to the provisions of 28 U.S.C. §1441(a) removed the case to Federal Court.  The plaintiff then requested the Court exercise its discretion and remand the matter back to State Court.  The Court held that because the complaint in that matter alleged the same facts to support both the Federal ADEA claim, and the State claims, it thus demonstrated that both claims were based on much of the same employer conduct under either the Federal or State claims.  Thus, the Court held that supplemental jurisdiction over the State claims was appropriate.

The defendants' reliance upon Lyon v. Whisman, 45 F.3d 758 (3d Cir. 1995) is, for the reasons stated above, inappropriate.  There, the Court found that Lyon's  FLSA claim would involve only "...very narrow, well defined factual issues about hours worked

during particular weeks." <u>Lyon</u>, supra, at p. 763.  The Court then found that the claims under the State law had little overlap between the evidence required for their proof, based upon quite distinct claims, and the evidence under the FLSA. <u>Id.</u>  The Court thus found that there was no "common nucleus of operative facts" upon which to rest supplemental jurisdiction. <u>Id.</u>  By contrast, in the present case, as demonstrated above, the facts necessary to prove pretext, would be very similar, and arise out of the same facts, which would be used to prove a breach of contract, and a breach of the covenant of good faith and fair dealing.  Furthermore, <u>Lyon v. Whisman</u>, supra, has not been interpreted expansively, but rather, has, where the facts are appropriate, been found to support the application of supplemental jurisdiction.  <u>New Rock Asset Partners, L.P. v. Preferred Entity Advancement, Inc.</u>, 101 F.3d 1492 (3d Cir. 1995).

For these reasons, the application for supplemental jurisdiction to the plaintiff's State claims, which arise from a common nucleus of operative facts, is appropriate.

IV.    THE ENACTMENT OF 19 DEL.C. §710 ET.SEQ. DOES NOT
PREEMPT CLAIMS FOR BREACH OF THE COVENANT OF
GOOD FAITH AND FAIR DEALING BASED UPON "FRAUD
DECIET OR MISREPRESENATION".

The claims by the plaintiff in this matter for the breach of the Delaware doctrine of

"Covenant of good faith and fair dealing", E.I. DuPont De Nemours & Co. v. Pressman,

supra, is not, as suggested by the defendants a parallel claim for age discrimination

(Defendants' Opening Brief, p. 14).  Rather, it stands in its own right as a separate and

distinct claim that is not  premised upon age discrimination. Rather, as demonstrated in

Argument II, infra, the claim for the breach of the "Covenant of good faith and fair

dealing" is based upon the defendants' use of fraud, deceit, and misrepresentations to

engineer the plaintiff's dismissal, in a breach of their contractual obligations.

The defendants' reliance upon EEOC v. Avecia, Inc., 151 F.E.D. Appx. 162; 2005

WL 2562617 (3d Cir. 2005) is wholly in applicable.  First, while the defendants are

correct that Avecia held that the enactment of 19 Del.C. §710 et.seq. acted as a sole

remedy for age discrimination, Avecia, supra, at p. 164-165, it did not preclude claims

for breach of the covenant of good faith and fair dealing, when based upon any of the

four (4) grounds recognized in E.I. DuPont de Nemours & Co v. Pressman, supra,.  The

four (4) ground recognized by the Third Circuit Court of Appeals as applicable are those

situations "...where the employer falsified or manipulated employment records to create

fictitious grounds for termination." Avecia, supra, at p. 65, citing Pressman.  The Avecia

Court held that there was no evidence to support such a claim. By comparison, here, on

a Motion to Dismiss, if the plaintiff could prove such factors, there would be claims

separate and apart from any claim of age discrimination. Thus, the application of Avecia

at this stage, before any factual record has been created, is not only inapplicable, but

clearly premature. <u>Avecia</u> was decided, in the lower court, after discovery, attempts at mediation, and on a motion for summary judgment. <u>Stepler v. Avecia, Inc.</u>, 2004 WL 1635528 (3d Cir. 2005). While the Court in <u>Conneen v. MBNA America Bank, N.A.</u>, 334 F.3d 318 (3d Cir. 2003) did caution that the covenant of good faith and fair dealing should not swallow the doctrine of "employment at will", it nevertheless went on to examine the plaintiff's claims that records had been falsified or manipulated, recognizing that evidence of such acts would constitute a breach of the covenant. There it found no such evidence.

Again, at this stage, on the Defendant's Motion to Dismiss, the allegations in the complaint, of fraud, deceit and misrepresentation must be recognized as leaving open the possibility that the plaintiff could present evidence sufficient to prove a breach of the covenant of good faith and fair dealing, based upon the falsification or manipulation of records. That is, if there are facts sufficient to raise the possibility that the plaintiff might prevail, the plaintiff is entitled to seek out and offer evidence in support of such claim. <u>In Re: Burlington Coat Factory, S.E.C. Litigation</u>, 114 F.3d 1410, 1420 (3d Cir. 1997).

The defendants' argument might well be correct if the only purpose for which the breach of the covenant of good faith and fair dealing claim was being advanced, was to argue that it was a claim, in substance, for age discrimination using the public policy exception of the covenant. However, that is not the case here. Rather, the allegations in the complaint here advance two theories under the "breach of contract". First,  that there were fraudulent misrepresentations, which might well be supported by evidence of manipulation of the records of the defendants, to accomplish the dismissal of the plaintiff (¶24). Secondly, that the termination of the plaintiff was designed to prevent him

from obtaining the fruits of his employment contract.[5] Both such claims would fall clearly within the doctrine of E. I. DuPont De Nemours & Co. v. Pressman, supra, and would not constitute a "back door" claim for age discrimination. Nothing by the enactment of 19 Del.C. §710 et.seq. precludes an employee from bringing non-discrimination claims against the employer which resulted in their termination.  This statute merely acts as a sole remedy for claims of discrimination, i.e. public policy.   The plaintiff's claims here are not so preempted.

---

[5] An employment relationship which is "at-will" is still a contract of employment. Schuster v. Derocili, 775 A.2d 1029 (Del. 2001); E.I. DuPont De Nemours & Co v. Pressman, supra.

## **CONCLUSION**

For the reasons stated herein, the defendants Motion to Dismiss should be denied in all respects, with the exception of the claims alleged under 19 <u>Del.C.</u> §710, et.seq., which, are consented to in this brief.

Respectfully Submitted,


_____/s/ Gary W. Aber_____
Gary W. Aber (DSB #754)
Aber, Goldlust, Baker & Over
702 King Street, Suite 600
P.O. Box 1675
Wilmington, DE  19899
(302) 472-4900
Attorney for Plaintiff

DATED:  June 2, 2006

# EXHIBIT A

Westlaw.

Not Reported in F.Supp.

Not Reported in F.Supp., 1995 WL 274501 (D.N.J.)
**(Cite as: Not Reported in F.Supp.)**

C
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. New Jersey.
Vito J. DERASMO, et al., Plaintiffs,
v.
HOSPITALITY FRANCHISE SYSTEMS, INC.,
Defendant.
**Civ. A. No. 93-46.**

May 08, 1995.

Richard E. Cooper, McCarter & English, Newark,
NJ, for plaintiffs.
James E. Patterson, Carpenter, Bennett &
Morrissey, Newark, NJ, for defendant.

*OPINION*
WOLIN, District Judge.
**\*1** This matter is brought before the Court on
defendants motion for summary judgment. For the
reasons set forth herein, defendants motion is
granted and Counts One, Two, Three and Four of
the complaint are dismissed with prejudice. The
Court lacks supplemental jurisdiction to hear the
pendent state law claims and will dismiss the
remaining counts of the complaint without prejudice.

### BACKGROUND

In 1991, plaintiff Vito J. Derasmo was employed as
vice president marketing for Best Western
International in Arizona. Plaintiff was earning
approximately $124,000 per year, had a company
car, a pension and a 401(k) plan. In September
1991, plaintiff was approached by a former
colleague, Michael Lee of Hospital Franchise
Systems, Inc. ("HFS"), with an offer of employment
in New York. Lee was seeking someone to design
and create a database to assist HFS sales
representatives on a nationwide basis.

Plaintiff, who was fifty-five years old in 1991, was
near retirement and initially declined the offer of
employment from HFS. HFS, however, continued to
seek out plaintiff. Plaintiff told HFS he would
consider switching jobs if he could be secure his
employment would last several years. Lee told
plaintiff he could expect to be at the company at
least five years. After a series of negotiations,
plaintiff reached a written agreement with HFS that
provided plaintiff would receive a base salary of
$90,000 plus an incentive compensation component
whereby plaintiff could earn up to $150,00 to
$175,000. Plaintiff negotiated a severance
agreement that provided plaintiff would receive
nine months compensation in the event his
employment was "terminated involuntarily for any
reason other than cause." Neither plaintiff's
employment agreement nor his severance agreement
contain any provision that guarantees plaintiff a
minimum of five years employment.

The terms of the offer of employment and severance
agreement were confirmed by correspondence dated
November 20, 1991 and December 3, 1991.
Plaintiff accepted HFS' offer of employment and
began working for HFS on December 6, 1991. At
the time he began his employment plaintiff was
fifty-five years old. Plaintiff testified by deposition
that during his first year as vice president of the
Franchise Marketing Department he expected to
spend 75% of his time developing a database that
would assist sales representatives in cultivating
good sales leads. He estimated that he would spend
at least 50% of his time during his second year
working on this database.

On January 31, 1992, HFS acquired Days Inn. John
Snodgrass, formerly president of Days Inn became
president of HFS. Gregory Casserly, formerly
senior vice president of franchising of Days Inn,
became executive vice president of franchise sales
of Days Inn. Lee resigned on February 7, 1992.

After the buy-out the new management team

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 2

Not Reported in F.Supp., 1995 WL 274501 (D.N.J.)
(Cite as: Not Reported in F.Supp.)

decided to eliminate the Franchise Marketing Department. All employees, including plaintiff, in this department were terminated. Plaintiff's termination was effective March 6, 1992.[FN1] In accordance with the severance agreement, HFS paid plaintiff his salary for the next nine months until November 1992. Plaintiff received approximately $67,500 in severance pay.

**\*2** In February 1992, HFS had an open position at Days Inn for a vice president of marketing. Plaintiff expressed interest in this job and was interviewed for the position in March and April 1992. In June 1992 plaintiff contacted Snodgrass about the status of his application. Snodgrass advised plaintiff that he was planning to interview additional candidates before making his decision. Plaintiff told Snodgrass that he had to know immediately whether he would be offered the position. Snodgrass replied that he was not able to tell plaintiff whether or not he had the job because there were other candidates to be interviewed. Plaintiff stated he was unwilling to wait. Therefore, Snodgrass advised plaintiff that if he had to have an answer immediately the answer was "no". Shortly thereafter, plaintiff accepted a different job where he was earning $90,000 per year. HFS continued to interview candidates for the Days Inn job and eventually hired John D. Bonifeld, who is fifty-two years old.

On January 5, 1993, plaintiff filed his lawsuit in this Court. Plaintiff's complaint contains ten separate counts. Counts One and Three allege that HFS terminated plaintiff's employment because of his age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA") and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et seq.* ("NJLAD"). Counts Two and Four alleged that HFS refused to hire plaintiff for a position at Days Inn because of his age in violation of the ADEA and NJLAD. Counts Five and Seven allege that HFS breached a contract of employment and the implied covenant of good faith and fair dealing. Count Eight alleges that HFS is promissorily estopped from terminating plaintiff's employment due to alleged representations that his employment would be "long term." Count Six alleges HFS breached a contract to pay plaintiff relocation benefits. Count Nine alleges HFS

fraudulently induced plaintiff to leave his former job. Count Ten alleges that HFS tortiously interfered with plaintiff's employment relationship with his former employer by inducing him to come work for HFS.

## DISCUSSION

### I. Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) ; *see Hersh v. Allen Prods. Co.,* 789 F.2d 230, 232 (3d Cir. 1986). In making this determination, a court must draw all reasonable inferences in favor of the non-movant. *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356-57 (1987); *Meyer v. Riegel Prods. Corp.,* 720 F.2d 303, 307 n.2 (3d Cir. 1983), *cert. dismissed,* 465 U.S. 1091, 104 S. Ct. 2144 (1984).

A dispute involving a material fact is "genuine" only "if the evidence is such that a reasonable jury would return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Whether a fact is "material" is determined by the substantive law defining the claims. *Id.* at 248; *United States v. 225 Cartons,* 871 F.2d 409, 419 (3d Cir. 1989).

**\*3** "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249. Summary judgment must be granted if no reasonable trier of fact could find for the non-moving party. *Id.* When, as here, the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing'--that is, pointing out to the District Court--that there is an absence of evidence to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                        Page 3

Not Reported in F.Supp., 1995 WL 274501 (D.N.J.)
(Cite as: Not Reported in F.Supp.)

support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). If the moving party has carried its burden of establishing the absence of a genuine issue of material fact, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). When the non-moving party's evidence in opposition to a properly-supported motion for summary judgment is merely "colorable" or "not significantly probative," the Court may grant summary judgment. *Anderson,* 477 U.S. at 249-50.

Further, when a non-moving party who bears the burden of proof at trial has failed, in opposition to a motion for summary judgment, to raise a disputed fact issue as to any essential element of his or her claim, summary judgment should be granted because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 322-23. "The mere existence of a scintilla of evidence will be insufficient." *Anderson,* 477 U.S. at 252. The inquiry is whether, " seen through the prism of the substantive evidentiary burden," a reasonable jury could render a verdict for the burdened non-movant. *Id.* at 254-55. Thus, in this case, once defendants make a properly supported motion for summary judgment, plaintiff must show that a reasonable jury could find he is entitled to a verdict by a preponderance of the evidence. *Id.* at 252.

In opposing summary judgment, a non-movant may not "rest upon mere allegations, general denials, or .. . vague statements." *Quiroga v. Hasbro, Inc.,* 934 F.2d 497, 500 (3d Cir.), *cert. denied,* --- U.S. ----, 112 S. Ct. 376 (1991); *Schoch v. First Fidelity Bancorporation,* 912 F.2d 654, 657 (3d Cir. 1990) ( "unsupported allegations in [a nonmovant's] memorandum and pleadings are insufficient to repel summary judgment"); *see* Fed. R. Civ. P. 56(e).

Although the summary judgment hurdle is a difficult one to meet, it is by no means insurmountable. "Where the evidence is so one-sided that it leaves no room for any reasonable differences of opinion as to any material fact" this

Court will grant summary judgment. *Tunis Bros. Co., Inc. v. Ford Motor Co.,* 763 F.2d 1482, 1489 (3d Cir. 1985). Accordingly, in *Celotex,* the Supreme Court concluded that "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose." *Celotex,* 477 U.S. at 323-324.

*4 HFS has moved for summary judgment on each of the ten counts in plaintiff's complaint.

## II. Age Discrimination

Count One of the complaint alleges that defendants terminated plaintiff's employment because of his age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA" ).

The presumptions and shifting burdens of production used in employment discrimination cases set forth in *McDonnell-Douglas Corp. v. Green,* 411 U.S. 792 (1973), and its progeny are familiar. A plaintiff must first establish a prima facie case of discrimination. If the plaintiff satisfies this requirement, the burden of production shifts to the defendant who is required to articulate a legitimate, non-discriminatory reason for the adverse employment action. If the defendant articulates a legitimate, non-discriminatory reason for its action, the burden of going forward shifts back to the plaintiff, who then must prove by a preponderance of the evidence that the reason articulated by the defendant is a pretext for unlawful age discrimination. *See St. Mary's Honor Center v. Hicks,* --U.S.--, 113 S. Ct. 2742 (1993); *Seman v. Coplay Cement Co.,* 26 F.3d 428 (3d Cir. 1994). Even if the plaintiff is able to demonstrate that the reasons articulated are pretextual, he must further present evidence to provide that the adverse decision was actually motivated by discriminatory animus. *Hicks,* 113 S. Ct. at 2742.

### A. Plaintiff's Prima Facie Case

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 4

Not Reported in F.Supp., 1995 WL 274501 (D.N.J.)
(Cite as: Not Reported in F.Supp.)

Plaintiff's first burden under *McDonnell Douglas* is to establish a prima facie case of age discrimination. There are four types of employment discrimination cases: (1) pure discrimination; (2) pretext; (3) mixed-motives; and (4) disparate impact.[FN2] Plaintiff and defendant agree that this case is a pretext case.

To establish a prima facie pretext text, plaintiff must demonstrate four elements by a preponderance of the evidence: (1) that he is a member of a protected class; (2) that he was qualified for the position; (3) that he was dismissed despite being qualified; and (4) that non-members of the protected class were treated more favorably, *i.e.*, that he was replaced by persons not in the protected class. *Hicks,* 113 S. Ct. at 2749. In a reduction in workforce case, when the plaintiff is not replaced, he need only show that "similarly situated [younger] employees" were treated more favorably. *Massarsky v. General Motors Corp.,* 706 F.2d 111 (3d Cir. 1983), *cert. denied,* 464 U.S. 937 (1983).

In this case, there is no dispute that plaintiff was in a protected class, [FN3] that he was qualified for the position and that he was discharged. Defendant argues that plaintiff has not introduced any evidence of the remaining elements of the prima facie case, namely that plaintiff was replaced by a younger worker or that similarly situated employees were treated more favorably.

Plaintiff argues that he was replaced by a younger worker, Ellen Combs. However, the uncontested facts belie this assertion. During his deposition plaintiff testified that during his first year of employment he expected to devote 75% of his time to the development of a database, known as a lead generation system, that would assist sales representatives. (Certification of Andrew Schwartz, Ex. A, at 208). Plaintiff testified that the remaining 25% of his time would be spent "refreshing" collateral materials that assist sales representatives. *Id.* at 209. Plaintiff described his duties as follows:
*5 Q: Where would those lead sheets comes from?
A: It would come from a database that we intended to build at Parsippany together with Dun & Bradstreet reports on existing independent properties or other brands in such a way that an

actual internally formatted computer lead sheet would be sent to each sales person in the field on a monthly basis to point them in the direction of a viable franchisee prospect, an owner of a property, rather than wasting a lot of time making phone calls to people who either didn't exist anymore or had no decision-making power. That would in a real sense collateral material that would assist sales people in the field.

*Id.* at 191-192.

Plaintiff alleges that Ellen Combs, a younger HFS employee, assumed his duties after his employment was terminated. However, Combs testified unequivocally that she had absolutely no responsibility for the development or management of the database -- the project plaintiff testified he expected to spend 75% of his time working on.
Q: Did you do any work on the development of the a database after the buy-out?
A: I don't believe I did.
Q: Did Mr. Casserly or Mr. Snodgrass or anyone else in the management of HFS instruct you to do any work on the development of a database?
A: I don't think so.
Q: Is the answer no? To the best of your recollection no?
A: To the best of my recollection, the answer is no.

(Affidavit of James E. Patterson, Ex. P, at 27). Combs testified that rather than maintain a database, Casserly simply wanted each sales representative to keep lead information on his own. *Id.* at 28. Moreover, Combs testified that *no one* was given responsibility for developing the database after plaintiff was terminated:Q: Did, as far as you know, the Franchise Marketing Department, or anyone else in the company for that matter, have any responsibility for developing a company wide database after the buy-out?
A: No.
Q: How do you know that?
A: Because if it would have been done, I would have known about it.
Q: And again, just so we're clear on the record, when you talk about a database the way we've been talking about it, you're talking about a computerized list of all hotel properties and who owns its and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 5

Not Reported in F.Supp., 1995 WL 274501 (D.N.J.)
(Cite as: Not Reported in F.Supp.)

various information about those hotels?
A: Correct.

*Id.* at 33.

Thus, plaintiff testified that he expected to spend
75% of his time during his first year at HFS
working on a database and Combs testified that
neither she nor anyone else at HFS assumed the
responsibility for creating and maintaining this
database. Thus, as a matter of law, plaintiff was not
replaced after his termination from HFS.

Similarly, there is absolutely no evidence that
similarly situated younger employees were treated
more favorably than plaintiff. Plaintiff alleges that
HFS employees Ralph Garcia and Scott Deaver are
younger employees who retained their jobs after he
was terminated. However, neither Garcia nor
Deaver worked in the Franchise Marketing
Department. Similarly, neither Garcia nor Deaver
were hired to create the database for which plaintiff
was hire to create. Thus, as a matter of law, Garcia
and Deaver are not similarly situated employees.
Plaintiff's entire division was fired after the buy-out;
both young and old employees in the division were
fired. Thus, as a matter of law, similarly situated
younger employees were not treated more favorably
than plaintiff.

*6 The three cases relied on by plaintiff are
distinguishable. In *Torre v. Casio, Inc.*, 42 F.3d
825, 830-31 (3d Cir. 1994), the plaintiff was one of
three regional sales managers in the audio-visual
division at Casio. Plaintiff was transferred and then
discharged while the other two regional sales
managers in the same division, Olsberg and
Horowitz -- aged 38 and 41, respectively, were
retained. When subsequent events made it
economically impossible to hire a new regional
sales manager, Olsberg subsumed plaintiff's
responsibilities. Thus, plaintiff introduced evidence
that younger employees in his same division were
retained when he was terminated and that a younger
employee had replaced him. Thus, the Third Circuit
held that plaintiff had presented a prima facie case
of age discrimination. "The inference of age
discrimination may not be overpowering but we
cannot say that, as a matter of law, it is insufficient."

*Id.* at 831-32.

In *White v. Westinghouse Elec. Co.*, 862 F.2d 56
(3d Cir. 1988), the plaintiff introduced evidence
that Westinghouse retained three members of the
transportation department under 40 years of age
when he was terminated. Thus, plaintiff introduced
evidence that younger members of his same
department were treated more favorably. As a
result, the Third Circuit held that plaintiff had made
out a prima facie case of age discrimination. *Id.* at
60.

In *Healey v. New York Life Ins. Co.*, 860 F.2d 1209
(3d Cir. 1988), *cert. denied*, 490 U.S. 1098 (1989),
the plaintiff introduced evidence that he was
replaced by a younger employee. In this case,
plaintiff introduced evidence that his duties were
given to an employee nine years younger. *Id.* at
1212. Thus, the Third Circuit held that the plaintiff
had made out a prima facie case of age
discrimination. *Id.* at 1214.

In each of these three cases, the plaintiff had
introduced some evidence to indicate either that
younger employees in the same division were
treated more favorably or that plaintiff was replaced
by a younger worker. However, in this case,
plaintiff has failed to introduce any evidence that
younger employees in the Franchise Marketing
Department were treated more favorably or that he
was replaced by a younger worker. Thus, as a
matter of law, plaintiff has failed to introduce
sufficient evidence to make out a prima facie case
of age discrimination.

Because plaintiff has failed to make out a prima
facie case of age discrimination the Court need not
examine defendant's nondiscriminatory reason for
terminating plaintiff. Likewise, the Court need not
examine whether plaintiff has introduced sufficient
evidence to suggest that the reasons advanced by
the defendant are pretextual.

In sum, because plaintiff has failed to introduce
sufficient evidence to make out a prima facie case
of age discrimination, the Court will dismiss with
prejudice Count One of the complaint.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1995 WL 274501 (D.N.J.)
**(Cite as: Not Reported in F.Supp.)**

### B. NJLAD Claim

Count Three of the complaint alleges that HFS terminated plaintiff's employment because of his age in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et seq.* ("NJLAD" ). Age discrimination claims under the NJLAD are governed by the same standards and burden of proof structure applicable to the ADEA. *Retter v. Georgia Gulf Corp.,* 755 F. Supp. 637, 638 (D.N.J. 1991), *aff'd,* 975 F.2d 1551 (3d Cir. 1992); *Giammario v. Trenton Board of Education,* 203 N.J. Super. 356, 361, 497 A.2d 199 (App. Div. 1985), *cert. denied,* 102 N.J. 336 (1985); *cert. denied,* 475 U.S. 1141 (1986). Therefore, because plaintiff has failed to introduce any evidence that he was replaced by a younger worker or that similarly situated younger employees were treated more favorably, he has failed to meet his burden of establishing a prima facie case under NJLAD. Thus, the Court will dismiss with prejudice Count Three of the complaint.

### II. Refusal to Hire Claim

*7 Counts Two and Four allege that HFS refused to hire plaintiff for a position at Days Inn because of his age in violation of the ADEA and NJLAD. This claim also is insufficient as a matter of law because plaintiff voluntarily withdrew his application for the position before HFS had an opportunity to hire him or reject him.

In February 1992, HFS had an open position at Days Inn for a vice president of marketing. Plaintiff expressed interest in this job and was interviewed for the position in March and April 1992. In June 1992 plaintiff contacted Snodgrass about the status of his application. Snodgrass advised plaintiff that he was planning to interview additional candidates before making his decision. It is undisputed that plaintiff told Snodgrass that he had to know immediately whether he would be offered the position. Snodgrass replied that he was not able to tell plaintiff whether or not he had the job because there were other candidates to be interviewed. It is also undisputed that plaintiff stated he was unwilling to wait. Therefore, Snodgrass advised

plaintiff that if he had to have an answer immediately the answer was "no." Shortly thereafter, plaintiff accepted a different job where he was earning $90,000 per year. HFS continued to interview candidates for the Days Inn job and eventually hired John D. Bonifeld, who is fifty-two years old. Thus, the undisputed facts reveal that plaintiff voluntarily withdrew his application for the Days Inn job before he could be hired or rejected by HFS.

Plaintiff's argument that continuing the application process would have been "futile" is without any factual support in the record. *Hartman v. Wick,* 600 F. Supp. 361 (D.D.C. 1984) is not analogous. In *Hartman,* the plaintiff, a female employee, introduced evidence that raised a material issue of fact whether the defendant had preselected a male employee to fill a position and then posted a job notice tailored to match the male employee's qualifications. *Id.* In this case, plaintiff has not introduced any evidence that suggests that HFS preselected a younger employee to fill the Days Inn position.

In this case there are no material issues of fact. It is undisputed that plaintiff voluntarily withdrew his application for the position before HFS had an opportunity to hire him or reject him. HFS never had an opportunity to discriminate against plaintiff based on his age. Therefore, the Court will dismiss Counts Two and Four of the complaint with prejudice.

### III. Pendant Jurisdiction

The remaining counts in plaintiff's complaint allege violations of state law. Counts Five and Seven allege that HFS breached a contract of employment and the implied covenant of good faith and fair dealing. Count Eight alleges that HFS is promissorily estopped from terminating plaintiff's employment due to alleged representations that his employment would be "long term." Count Six alleges HFS breached a contract to pay plaintiff relocation benefits. Count Nine alleges HFS fraudulently induced plaintiff to leave his former job. Count Ten alleges that HFS tortiously

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 7

Not Reported in F.Supp., 1995 WL 274501 (D.N.J.)
(Cite as: Not Reported in F.Supp.)

interfered with plaintiff's employment relationship with his former employer by inducing him to come work for HFS.

*8 This Court has jurisdiction over plaintiff's ADEA claims by virtue of 28 U.S.C. § 1331 (federal subject matter jurisdiction). Plaintiff argues that this Court has supplemental jurisdiction over his state law claims. Congress has authorized district courts to exercise jurisdiction supplemental to their federal question jurisdiction in 28 U.S.C. § 1367, which states:
in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Section 1367 codifies the jurisdictional standard established in *United Mine Workers of America v. Gibbs,* 383 U.S. 715 (1966). In *Gibbs,* the Supreme Court established a three-part test for the exercise of supplemental jurisdiction. First, "[t]he federal claim must have substance sufficient to confer federal subject matter jurisdiction on the court." *Id.* at 725. Plaintiff's ADEA claim satisfies this standard. The other two requirements are:[1] The state and federal claims must derive from a common nucleus of operative facts. [2] But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issue, there is *power* in federal courts to hear the whole.

*Id.* (emphasis added). However, even assuming the district court has the "power" to exercise its supplemental jurisdiction, it still retains the discretion to decline to exercise its supplemental jurisdiction. The Supreme Court in *Gibbs* held:[The] power need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right.

*Id.* at 726. Thus, this Court must first determine if it has the power to entertain plaintiff's state law

claims. Then, if necessary, the Court will determine whether in its discretion it should exercise its supplemental jurisdiction to hear state law claims.

## A. Power to Exercise Supplemental Jurisdiction

With respect the question of whether this Court has the power to exercise supplemental jurisdiction, the issue is whether there is a "common nucleus operative facts" shared by plaintiff's ADEA claims and his state law claims. Courts are split in how they interpret this test. Some courts have held that a "loose" nexus is enough. *Frye v. Pioneer Logging Machinery Inc.,* 555 F. Supp. 730, 732 (D.S.C. 1983) (refusal to employ plaintiff forms sufficient nexus between Title VII and state law breach of contract claims); *Prakash v. American University,* 727 F.2d 1174 (D.C. Cir. 1984) (employment relationship forms sufficient nexus between FLSA claims and state law breach of contract and tort claims). However, the Third Circuit has expressly rejected this loose nexus test. In *Lyon v. Whisman,* 45 F.3d 758 (3d Cir. 1995), the Third Circuit held: "[T]here is virtually no support for this broad reading of Article III and *Gibbs.*" *Id.* at 762. In *Lyon* the Third Circuit held there was no common nucleus of facts between plaintiff's claim that her employer failed to pay her overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a), and her state law claims for breach of contract and tort based on her employer's failure to pay a promised bonus on time or in full. The opinion is especially noteworthy because of the fact that the Third Circuit *sua sponte* vacated the district court opinion for erroneously exercising its supplemental jurisdiction. Neither the plaintiff nor the defendant challenged the district court's supplemental jurisdiction.

*9 In vacating the district court's opinion, the Third Circuit held: "The only link between Lyon's FLSA and state law claims is the general employer-employee relationship between the parties." *Id.* The Court went on to explain:
Lyon's FLSA claim involved a very narrow, well-defined factual issue about hours worked during particular weeks. The facts relevant to her state law contract and tort claims, which involved

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 8

Not Reported in F.Supp., 1995 WL 274501 (D.N.J.)
**(Cite as: Not Reported in F.Supp.)**

Whisman's alleged underpayment of a bonus and its refusal to pay the bonus if Lyon started looking for another job, were quite distinct. In these circumstances it is clear that there is so little overlap between the evidence relevant to the FLSA and state claims, that there is no "common nucleus of operative fact" justifying supplemental jurisdiction over the state law claims. In fact it would be charitable to characterize the relationship of the federal and state claims as involving even a "loose" nexus. Thus, Article III bars federal jurisdiction.

*Id.* at *763.* It is therefore apparent that the Third Circuit interprets section 1367 and *Gibbs* very narrowly. The opinion in *Lyon* suggests that the Third Circuit views the exercise of supplemental jurisdiction as proper only in those cases where the state and federal claims "are merely alternative theories of recovery based on the same act." *Id.* at 761 (quoting *Lentino v. Fringe Employee Plans, Inc.,* 611 F.2d 474, 470 (3d Cir. 1979)).

Here, plaintiffs claims under ADEA and NJLAD is an example of a case where identical facts form the basis of both federal and state law claims. Thus, the Court has exercised its supplemental jurisdiction to decide plaintiff's NJLAD claims. However, the nexus between plaintiff's remaining state law claims is far more remote.

The Court finds only one fact is common to both plaintiff's ADEA claims and the remaining state law claims: the employer/employee relationship. This fact must be proven under both the ADEA claims and the state law claims for breach of employment contract, breach of the implied covenant of good faith and fair dealing, and breach of relocation contract. Significantly, plaintiff need not prove he was an employee to recover under his claim of promissory estoppel, fraudulent inducement and tortious interference with a prior employment relationship.

With respect to his ADEA claim plaintiff must prove he was in a protected class, that he was qualified for the position and that he was discharged because of his age. Each of these facts is irrelevant, or at least immaterial, to plaintiff's state law breach of contract and tort claims.

Conversely, with respect to his state law claims, plaintiff must prove the terms of his employment and termination contract; he must prove that certain oral promises were made, he must prove that these oral promises created a binding oral contract or that he relied to his detriment on these promises; he must prove that HFS failed to deal "fairly" with him; he must prove that HFS promised to pay relocation benefits and failed to do so. None of these facts are material to plaintiff's ADEA claim.

*10 Thus, plaintiff's state and federal claims present entirely different elements of proof and theories of recovery. In other words, plaintiff's state and federal claims do not have a "common nucleus of operative facts." Therefore, the Court does not have the power to exercise supplemental jurisdiction over plaintiff's state law claims.

Moreover, the broad remedies available to plaintiff on his state claims make these claims the predominant elements of the lawsuit. In fact, plaintiff's brief leads off with his state law claims. Plaintiff's state law claims are pendent to his federal claims "much as a dog is pendent to its tail." *Bouchet v. National Urban League, Inc.,* 730 F.2d 799, 806 (D.C. Cir. 1984) (Scalia, J.).

This Court's conclusion that plaintiff's state law claims are factually diverse from his ADEA claim is in accord with several other district court opinions. In *Mason v. Richmond Motor Co., Inc.,* 625 F. Supp. 883 (E.D. Va. 1986), *aff'd,* 825 F.2d 407 (4th Cir. 1987), District Judge Warriner held in an ADEA case very similar to this case that the court did not have the power to exercise supplemental jurisdiction over state law claims for breach of employment contract, promissory estoppel and breach of the covenant of good faith and fair dealing. Similarly, in *Nicol v. Imagematrix, Inc.,* 767 F. Supp. 744 (E.D. Va. 1991), the court held its did not have supplemental jurisdiction in Title VII lawsuit alleging sexual discrimination to hear plaintiff's state law claims of breach of employment contract, wrongful discharge, intentional infliction of emotional distress, intentional interference with economic opportunity, negligent retention and fraud. The Court held that plaintiff's state law claims "share no facts with the Title VII claim other

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Page 9

Not Reported in F.Supp., 1995 WL 274501 (D.N.J.)
**(Cite as: Not Reported in F.Supp.)**

than the mere fact of plaintiff's employment." *Id.* at 748. Numerous other courts confronted with ADEA claims and state law claims for breach of contract and tort have refused to exercise supplemental jurisdiction. *See e.g., Lettich v. Kenway,* 590 F. Supp. 1225 (D. Mass. 1984); *Sanders v. Duke University,* 538 F. Supp. 1143 (M.D.N.C. 1982).

Because the Court does not have the power to exercise supplemental jurisdiction over plaintiff's state law claims Counts Five, Six, Seven, Eight, Nine and Ten of the complaint will be dismissed without prejudice.

### CONCLUSION

For the foregoing reasons, defendants motion for summary judgment on Counts One, Two, Three and Four of the complaint will be granted. Counts One, Two, Three and Four will be dismissed with prejudice. Because this Court lacks supplemental jurisdiction, the remaining counts of the complaint will be dismissed without prejudice.

An appropriate order is attached.

### ORDER

In accordance with the Court's Opinion filed herewith, It is on this 8th day of May, 1995

ORDERED that defendant's motion for summary judgment on Counts One, Two, Three and Four of the complaint is granted; and it is further

\*11 ORDERED that Counts One, Two, Three and Four of the complaint are dismissed with prejudice; and it is further

ORDERED because this Court lacks supplemental jurisdiction, the remaining counts of the complaint are dismissed without prejudice.

FN1. Plaintiff's employment lasted only three months, from December 6, 1991 to March 6, 1992.

FN2. A "pure discrimination" case arises in the rare instance when actual "direct" or "smoking gun" evidence of discrimination is available. In such a case, elements of proof are no different from any other case. A "mixed motive" case is one in which both legitimate and illegitimate factors contribute to the employment decision. To establish a "mixed motive" case the plaintiff must also present evidence of direct discrimination. A "pretext" case arises when the employer's articulated reason for the employment decision is actually a pretext for unlawful discrimination. A "disparate impact" case arises when the employer's action has a disparate impact on a protected class.

FN3. Under the ADEA and NJLAD a plaintiff is a member of the protected class if he is over 40 years old. Plaintiff was 55 years old at the time of his termination.

D.N.J. 1995
Derasmo v. Hospitality Franchise Systems, Inc.
Not Reported in F.Supp., 1995 WL 274501 (D.N.J.)

Briefs and Other Related Documents (Back to top)

• 2:93cv00046 (Docket) (Jan. 08, 1993)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B

Westlaw.

Not Reported in F.Supp.

Page 1

Not Reported in F.Supp., 1996 WL 182559 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern
Division.
Lucy C. HARRISON, Plaintiff,
v.
BOARD OF EDUCATION, MAINE TOWNSHIP
HIGH SCHOOL DISTRICT NO. 207, Defendant.
**No. 96 C 407.**

April 15, 1996.

*MEMORANDUM OPINION AND ORDER*

ASPEN, Chief Judge:
*1 Plaintiff Lucy C. Harrison brings this three-count
complaint against the Board of Education, Maine
Township High School District No. 207 ("the Board
"). Presently before this court is the plaintiff's
motion to remand the entire case back to the Circuit
Court of Cook County, where it was originally filed.
For the reasons set forth below, the motion is
denied.

I. Background

Harrison, a fifty-one year old schoolteacher,
maintains that she was employed by the Board as a
full-time teacher from September 1991 through
June 1995. During the first three years (1991-94)
she was a full-time substitute teacher, and during
the fourth school term (1994-95) she was a full-time
English teacher. On April 10, 1995, the Board
passed a resolution releasing Plaintiff from her
employment. The Board stated that the termination
was required because no positions were available
for a teacher such as Harrison in her second "
probationary" year.

The plaintiff filed her original complaint for
declaratory and injunctive relief on July 14, 1995,

in the Circuit Court of Cook County. The sole issue
raised by Harrison in this complaint was whether
her dismissal after four consecutive school terms of
employment violated the tenure provisions of the
Illinois School Code, 105 ILCS 5/24-11.[FN1] In
addition to the civil action, the plaintiff filed a
charge of discrimination with the Equal
Employment Opportunity Commission ("EEOC")
on June 15, 1995, alleging that she had been
terminated by the Board because of her age. The
EEOC issued Harrison a right to sue letter in
September 1995, and within ninety days she
amended her complaint to allege a claim of age
discrimination under the Age Discrimination in
Employment Act ("ADEA") (Count II), and an
equal protection claim under the Fourteenth
Amendment and 42 U.S.C. § 1983 (Count III).
Defendant timely removed the action to this court
under 28 U.S.C. § 1441(b), (c). Plaintiff now seeks
to remand the entire action to state court under §
1441(c), or, in the alternative, to remand Count I
under 28 U.S.C. § 1367(c).

II. Discussion

Plaintiff's first argument is based on § 1441(c),
which provides:
Whenever a separate and independent claim or
cause of action within the jurisdiction conferred by
section 1331 of this title is joined with one or more
otherwise non-removable claims or causes of
action, the entire case may be removed and the
district court may determine all issues therein, or, in
its discretion, may remand all matters in which State
law predominates.

28 U.S.C. § 1441(c).[FN2] Harrison contends that
state law predominates over all her claims, and
therefore we should remand this entire action to the
Circuit Court. However, the language of § 1441(c)
makes clear that the predominance of state law over
the case is relevant only if the plaintiff's federal
claims are "separate and independent" from her

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 2

Not Reported in F.Supp., 1996 WL 182559 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

state law claims. *In re City of Mobile,* 75 F.3d 605, 608 (11th Cir. 1996); *Borough of West Mifflin v. Lancaster,* 45 F.3d 780, 785-87 (3d Cir. 1995); *Palivos v. City of Chicago,* 901 F. Supp. 271, 272-73 (N.D. Ill. 1995); *Kabealo v. Davis,* 829 F. Supp. 923, 926 (S.D. Ohio 1993), *aff'd,* No. 94-4103, 1995 WL 712793, at *3 (6th Cir. Dec. 1, 1995); *McGilvray v. Hallmark Fin. Group, Inc.,* 891 F. Supp. 265, 268 (E.D. Va. 1995). Although the phrase "separate and independent" is not self-defining, the Supreme Court elaborated on this language in *American Fire & Casualty Co. v. Finn,* 341 U.S 6, 14 (1951): "[W]here there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under § 1441(c)." Indeed, "[e]ven if more than a single wrong exists, claims are not 'separate and independent' if the wrongs arise from an interlocked series of transactions, i.e., they substantially derive from the same facts." *Lewis v. Louisville & Nashville R.R.,* 758 F.2d 219, 221 (7th Cir. 1985).[FN3]

*2 In the instant case, it is apparent that Count I is not "separate and independent" from Counts II and III. Harrison claims that the Board's refused to hire her as a teacher for the 1995-96 school term, notwithstanding her three previous years of employment as a substitute teacher and her one year as a probationary English teacher. In Count I she maintains that this termination violated her rights under 105 ILCS 5/24-11, which grants tenure to teachers who have worked for at least two years. In addition, she claims that the Board's action was taken because of her age, and that younger teachers were retained as tenured employees in the district. Therefore, she claims, the Board's conduct also violated her rights under the ADEA (Count II) and the Fourteenth Amendment to the federal Constitution (Count III). Although these claims are grounded in separate legal theories, they all arise out of an "interlocking series of transactions" and "substantially derive from the same facts." *See Lewis,* 758 F.2d at 221. Thus, these three claims are not "separate and independent," and therefore not removable (or remandable) under § 1441(c).[FN4] *See Palivos,* 901 F. Supp. at 273; *Mendelovitz v. Vosicky,* No. 93 C 937, 1993 WL 189913, at *2

(N.D. Ill. May 28, 1993); *Torres v. Ortega,* No. 92 C 4504, 1993 WL 62998, at *2-3 (N.D. Ill. March 2, 1993). Accordingly, we deny the plaintiff's motion to remand the entire case under § 1441(c).

Alternatively, Harrison argues that we should decline to exercise supplemental jurisdiction over Count I because "(1) the claim raises a novel or complex issue of State law, [and] (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(1), (2). However, we conclude that the instant action does not fit into either of these two categories. Contrary to the plaintiff's assertion that the claim presented in Count I--that is, whether 105 ILCS 5/24-11 grants tenure to substitute teachers--is "one of first impression," Pl.'s Reply Mem. at 10, our cursory review of the case law has uncovered at least three cases discussing the issue, *Booker v. Hutsonville Sch. Dist. No. 1,* 437 N.E.2d 937, 940-41 (Ill. App. Ct. 1982); *Woods v. East St. Louis Sch. Dist. No. 189,* 498 N.E.2d 801, 805-06 (Ill. App. Ct. 1986); *Kuykendall v. Board of Educ. of Evanston Township High Sch. Dist. No. 202,* 444 N.E.2d 766, 769-70 (Ill. App. Ct. 1982). Of course, as a federal court of limited jurisdiction we are mindful to avoid unnecessary incursions into state law. Nonetheless, Count I does not raise such a "novel" or "complex" issue of state law as to justify declining our supplemental jurisdiction.

Nor do we believe that the state law issues raised in Count I predominate over the federal claims raised in Counts II and III. Regardless of whether Harrison's rights under the School Code were violated, if she was terminated because of her age then the ADEA and § 1983 were implicated. We are not faced with a situation like *Palivos,* where the plaintiff's state law property claim predominated over his sole federal claim because the latter was based on an alleged deprivation of property without due process, and state law determined whether the plaintiff possessed a property right at all. 901 F. Supp. at 273. Rather, Harrison's equal protection and ADEA claims do not depend on a resolution of Count I, but can be decided without regard to the merits of her state law claim.[FN5] Accordingly, we deny Harrison's motion to remand Count I to the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                Page 3

Not Reported in F.Supp., 1996 WL 182559 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

Circuit Court of Cook County based on § 1367(c).

III. Conclusion

**\*3** For the reasons set forth above, the plaintiff's motion to remand is denied. It is so ordered.

FN1. This statute provides, in pertinent part:
Any teacher who has been employed in any district as a full-time teacher for a probationary period of 2 consecutive school terms shall enter upon contractual continued service unless given written notice of dismissal stating the specific reason therefor, by certified mail, return receipt requested by the employing board at least 60 days before the end of such period.
105 ILCS 5/24-11.

FN2. At the outset, we note that the proper interpretation of § 1441(c) is the subject of much debate. For example, despite the fact that the statute does not explicitly authorize the remand of entire cases, but rather, only of "matters in which State law predominates," some courts have purported to find the authority in § 1441(c) to remand an entire case containing both state and federal claims, *e.g., Holland v. World Omni Leasing, Inc.,* 764 F. Supp. 1442, 1443-45 (N.D. Ala. 1991). Others have disagreed and held that federal claims are not remandable under § 1441(c). *E.g., Kabealo v. Davis,* 829 F. Supp. 923, 925-26 (S.D. Ohio 1993). Indeed, one district court has even concluded that § 1441(c) exceeds the scope of federal judicial power authorized in Article III of the Constitution. *Salei v. Boardwalk Regency Corp.,* 913 F. Supp. 993, 1004-10 (E.D. Mich. 1996). Fortunately, we need not delve into these issues because, as discussed below, we conclude that § 1441(c) is inapplicable in the instant case.

FN3. To be sure, there is some authority for the proposition that after the 1990 amendment of § 1441(c) the phrase " separate and independent" no longer means what *Finn* says it does, *see, e.g., In re City of Mobile,* 75 F.3d at 608-10 (Birch, J., dissenting); *Moore v. DeBiase,* 766 F. Supp. 1311, 1316-19 (D.N.J. 1991), or that claims need not be "separate and independent" in order to remand an entire case under § 1441(c), *see, e.g., Land and Lakes Co. v. Henderson,* No. 94 C 1815, 1994 WL 124876, at \*2-3 (N.D. Ill. Apr. 11, 1994). We find these arguments unpersuasive. Although the version of § 1441(c) addressed by the Supreme Court in *Finn* was amended in 1990, the " separate and independent claim" language was not altered in any way by the amendment. Moreover, there is no indication that Congress intended to change this long-standing interpretation of the phrase. Therefore, we adhere to the position adopted by the Third Circuit in *Lancaster,* the Eleventh Circuit in *In re City of Mobile,* and this court in *Palivos* --that is, in order to remand matters under § 1441(c), the federal and non-federal claims must be "separate and independent" as that phrase is defined in *Finn.*

FN4. This does not render the Board's removal defective, since § 1441(b) clearly authorizes the removal of those federal law claims in which jurisdiction is premised on 28 U.S.C. § 1331 (Count II and III), as well as those state law claims in which jurisdiction is grounded in 28 U.S.C. § 1367 (Count I).

FN5. This conclusion does not somehow render the claims "separate and independent" for purposes of § 1441(c), as Harrison argues in her reply memorandum. Instead, because the "separate and independent" inquiry under § 1441(c) is totally different from the "state law predominates" question presented by § 1367(c)(2), we are able to conclude that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                          Page 4

Not Reported in F.Supp., 1996 WL 182559 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

       remand under either provision is inappropriate in this case.
N.D.Ill.,1996.
Harrison v. Board of Educ., Maine Tp. High School Dist. No. 207
Not Reported in F.Supp., 1996 WL 182559 (N.D.Ill.)

Briefs and Other Related Documents (Back to top)

• 1:96cv00407 (Docket) (Jan. 22, 1996)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that two copies of the attached pleading were hand delivered to the following counsel on June 2, 2006:

Sheldon N. Sandler, Esquire
Young, Conaway, Stargatt & Taylor
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899

Melissa A. Chionchio
Secretary to Gary W. Aber, Esquire